*In re* MARRIAGE OF CAROLYN A. DAVIS, a/k/a Carolyn A. Freeman, Petitioner-Appellant, and GERALD C. FREEMAN, Respondent-Appellee.

Third District   No. 3—83—0065

Opinion filed June 22, 1984.

Raymond L. Huff, of Peoria, for appellant.

Franklin L. Renner, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, Carolyn A. Davis (former Carolyn A. Freeman), appeals from the trial court's order terminating the obligation of the respondent, Gerald C. Freeman, to pay maintenance as of the date of the petitioner's remarriage pursuant to section 510(b) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1981, ch. 40, par. 510(b) (hereafter the IMDMA).

A brief review of the facts is necessary before we address the issue in this case. On March 18, 1982, the petitioner and respondent were granted a judgment of dissolution of marriage with all ancillary aspects reserved for subsequent hearing. On May 3, 1982, the Honorable Stephen J. Covey, Chief Judge of the Tenth Judicial Circuit, en-

tered an order entitled "Judgment for Disposition of Property, Custody, Child Support, Visitation and all Other Pending Matters" (hereafter Initial Order). Paragraph C of the Initial Order of May 3, 1982, provided:

> "C. For maintenance of the Petitioner, the Respondent shall make payments to her for a period of thirty-six (36) months in the following manner: the sum of Seven Hundred and Fifty Dollars ($750) during the period of time she is receiving unemployment insurance payments and Eight Hundred and Fifty Dollars ($850) per month when said payments terminate except that such payments shall cease upon the remarriage of the Petitioner, death of either party, continuous cohabitation with another person by Petitioner or upon further order of Court after a change in economic status of either party justifies a change. Such payments are solely for the maintenance of the Petitioner."

The petitioner filed a post-trial motion and an amendment to post-trial motion. In the post-trial motion and at hearing, the petitioner asserted certain inequities in the distribution of property by the Initial Order of May 3, 1982. Among the petitioner's assertions was that she should have been awarded a greater share of the property before the court awarded maintenance and that the maintenance award should have been an award in gross to insure its receipt, to offset the disproportionate distribution of property to the respondent, and to change the tax consequences.

On June 24, 1982, Judge Covey entered a "Modified Judgment for Disposition of Property, Custody, Child Support, Visitation and all Other Pending Matters" (hereafter First Modified Order). Paragraph C of the First Modified Order provided:

> "C. For maintenance in gross of the Petitioner the Respondent shall pay the sum of Twenty-seven Thousand Dollars ($27,000) at the rate of Seven Hundred and Fifty Dollars ($750) per month for a total of thirty-six (36) months."

All other property disposition provisions of the Initial Order entered May 3, 1982, were retained.

On July 9, 1982, Judge Covey entered an order entitled "Second Modified Judgment for Disposition of Property, Custody, Child Support, Visitation and all Other Pending Matters" (hereafter Second Modified Order). Paragraph C of the Second Modified Order provided:

> "C. For maintenance in gross of the Petitioner the Respondent shall pay the sum of Twenty-seven Thousand Dollars ($27,000) at the rate of Seven Hundred and Fifty Dollars ($750)

per month for a total of thirty-six (36) months. Said payments to be terminable upon the death of either Petitioner or Respondent. First payment to be made on May 5, 1982, and on the 5th of each month thereafter until paid in full."

All other property disposition provisions of the First Modified Order entered June 24, 1982, were retained.

On August 21, 1982, the petitioner remarried. The respondent did not pay the September installment of the maintenance award. On December 17, 1982, the respondent filed a petition to terminate the maintenance obligation. On December 21, 1982, the Honorable Donald C. Courson, found "[t]hat the Petitioner was remarried on August 21, 1982, and pursuant to Section 510(b) of Chapter 40 of the Illinois Revised Statutes, the Respondent's obligations to pay maintenance to the Petitioner terminated on that date." Judge Courson entered an order providing that "[t]he maintenance to be paid by the Respondent to the Petitioner is terminated as of August 21, 1982." It is from that order that the petitioner appeals.

Section 504(b) of the IMDMA (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)) provides that "maintenance *** may be in gross ***." Section 510(b) (Ill. Rev. Stat. 1981, ch. 40, par. 510(b) provides that "the obligation to pay future maintenance is terminated upon *** the remarriage of the party receiving maintenance ***." The issue in the instant case requires that we construe these statutory provisions. We must ultimately determine whether the maintenance in gross awarded the petitioner in the Second Modified Order under section 504(b) is future maintenance which, pursuant to section 510(b), must terminate upon remarriage.

As a preliminary matter, we note that both section 504(b) and section 510(b) of the IMDMA were amended in 1982. Section 510(b) was amended by Public Act 82—194, effective January 1, 1982. (1981 Ill. Laws 1130.) Section 504(b) of the IMDMA was amended twice in 1982; first by Public Act 82—566, effective January 1, 1982 (1981 Ill. Laws 2850), and a second time by Public Act 82—716, effective July 1, 1982. (1981 Ill. Laws 716.) Article III of the 1982 Revisory Act resolved these multiple actions of the 82nd General Assembly. (1982 Ill. Laws 231.) While the effective date of the 1982 Revisory Act was July 13, 1982, it was not intended to make substantive revisions in the law and its effective date was not intended to prevail over the July 1, 1982, effective date of Public Act 82—716.

The dates and language of the amendments, their relationship to the orders in this case, and other dates important to our consideration are presented below in chronological order:

September 25, 1981 - Petition for dissolution of marriage, filed by petitioner;

January 1, 1982 - Effective date of Public Act 82—194, adding the following indicated language to section 510(b) of the IMDMA (Ill. Rev. Stat. 1981, ch. 40, par. 510(b)):

"(b) Unless otherwise agreed by the parties in a written separation agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance ***." (Additions indicated by underlining.) (1981 Ill. Laws 1130.)

March 18, 1982 - Entry of judgment of dissolution of marriage;

May 3, 1982 - Entry of Initial Order;

June 24, 1982 - Entry of first Modified Order;

July 1, 1982 - Effective date of Public Act 82—716, adding the following indicated language to section 504(b) of the IMDMA (Ill. Rev. Stat. 1981, ch. 40, par. 504(b):

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, made without regard to marital misconduct and may be in gross or for fixed or indefinite periods of time and the maintenance may be made from the income or property of the other spouse after consideration of all relevant factors, including: ***." (Additions indicated by underlining.) (1981 Ill. Laws 3817.)

July 9, 1982 - Entry of the Second Modified Order;

August 21, 1982 - Petitioner was remarried;

December 27, 1982 - Entry of order terminating maintenance in gross award as of August 21, 1982; and

January 20, 1983 - Notice of appeal filed by petitioner.

We must determine, among other matters, whether sections 504(b) and 510(b) as amended properly apply to the case at bar.

In *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 1002, 431 N.E.2d 1, 13, the court held that the amendment of section 510(b) by Public Act 82—194 was intended by the legislature to clarify the original legislative intent of the paragraph which existed when the IMDMA was enacted in 1977. The *Mass* court held, therefore, that the provisions of section 510(b) as amended were fully applicable to proceedings conducted prior to the effective date of the amendment. Likewise, the provisions of section 510(b) as amended are fully applicable to the proceedings in this case. See *Krug-Etheridge v. Krug* (1982), 111 Ill. App. 3d 780, 783, 444 N.E.2d 690, 692.

■ The above reasoning also applies to the amendment of section 504(b). As discussed below, there has been disagreement between the districts of our appellate court as to whether section 504(b), prior to amendment by Public Act 82—716, authorized awards of maintenance in gross. We believe that the amendment of section 504(b) by Public Act 82—716 was intended by the legislature to clarify the original legislative intent of that section as it existed when the IMDMA was enacted in 1977. Therefore, the provisions of section 504(b) as amended are fully applicable to the proceedings in this case conducted prior to the effective date of the amendment. We hold that the amendments to section 504(b) and to section 510(b) are fully applicable in this appeal.

Having determined that sections 504(b) and 510(b) as amended are applicable to the case at bar, we may now address the merits of this appeal. The petitioner argues that the award of maintenance in gross in the Second Modified Order is equivalent to nonmodifiable alimony in gross and is not future maintenance. Therefore, the petitioner asserts, section 510(b) was not authority for terminating the maintenance in gross award upon her remarriage. The respondent argues in response that the award of maintenance in the Second Modified Order is modifiable and therefore all installments of the maintenance award due after the petitioner's remarriage were properly terminated by operation of law pursuant to section 510(b) of the IMDMA.

We must initially determine whether, under the facts and orders in the case at bar, the petitioner is correct in her assertion that maintenance in gross under section 504(b) is equivalent to awards of nonmodifiable alimony in gross.

It was not until July 1, 1982, when section 504(b) was amended by Public Act 82—716, that the IMDMA specifically authorized awards of maintenance in gross. While the IMDMA does not define maintenance in gross and we are unaware of any cases defining that phrase subse-

quent to the amendment of section 504(b), we may turn to cases decided before the IMDMA was passed for assistance in determining the characteristics of maintenance in gross.

Prior to October 1, 1977, the effective date of the IMDMA, there were four distinct methods by which a divorced spouse could make support payments. These four methods were: periodic alimony, alimony in gross (also called lump sum settlement in lieu of alimony), property settlement payments (also called lump sum settlement in lieu of all the wife's interests), and contractual support. (*In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 994-98, 431 N.E.2d 1, 8-11.) Only the first two methods, periodic alimony and alimony in gross, are important to this case.

Periodic alimony, now called maintenance, was defined as an allowance in a divorce decree carved out of one spouse's estate for the support of the other. (*Adler v. Adler* (1940), 373 Ill. 361, 369, 26 N.E.2d 504, 508, *cert. denied* (1940), 311 U.S. 670, 85 L. Ed. 430, 61 S. Ct. 29.) The distinguishing characteristic of periodic alimony was that it was for an indefinite period of time. (*Walters v. Walters* (1950), 341 Ill. 561, 567, 94 N.E.2d 726, 729, *aff'd* (1951), 409 Ill. 298, 99 N.E.2d 342.) Since periodic alimony was based on the spouse's common law duty to support the other, the payments could be changed or terminated by a court upon a "change in circumstance" of the husband or wife. The obligation usually terminated on the death of the obligor or the recipient, and future installments were never a charge on the obligor's estate. (*Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 895, 416 N.E.2d 366, 368.) It was a mere expectancy which could not vest until the day of payment. *Walters v. Walters* (1950), 341 Ill. App. 561, 581, 94 N.E.2d 726, 735 (Niemeyer, P.J., specially concurring).

Alimony in gross was distinguishable from periodic alimony because it took the form of an order to pay the recipient a definite sum of money. It was payable absolutely and not conditionally or contingently, in a single payment or in installments, and was a vested right in the beneficiary from the date the decree was entered. (*Walters v. Walters* (1950), 341 Ill. App. 561, 581, 94 N.E.2d 726, 735 (Niemeyer, P.J., specially concurring).) Alimony in gross was not modifiable; it could not be changed or terminated by a court due to a "change in circumstance" of the parties. *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 994-95, 431 N.E.2d 1, 8.

The most important distinction between periodic alimony and alimony in gross was that the latter could not be changed by a court due to a "change in circumstance" of the parties, while periodic alimony was modifiable.

■ An analysis of the maintenance provisions of the Initial Order and the First and Second Modified Orders utilizing the above distinction reveals that the First and Second Orders have the characteristics of alimony in gross, rather than periodic alimony. In both modifications, Judge Covey used the phrase "maintenance in gross." He ordered the respondent to pay a definite total sum of money ($27,000), in a definite number of installments (36), until paid in full. Finally, he did not retain the sentence from the Initial Order terminating the maintenance award upon the petitioner's remarriage.

There is additional support in the record for the view that when Judge Covey used the phrase "maintenance in gross," he meant the award to have the same characteristics as "alimony in gross." The court found that the respondent was an able-bodied person capable of paying maintenance to the petitioner and that the petitioner was a college graduate who was employable, even though she had been unemployed for 20 years prior to the divorce. When Judge Covey modified the Initial Order in response to the petitioner's request for more property, the only changes he made pertained to the maintenance award. The provisions pertaining to disposition of property, custody, child support, and visitation were not changed. It seems apparent that Judge Covey's purpose in making those changes was to insure that the petitioner would receive a definite, nonmodifiable sum of money that could be used for her rehabilitation and to enable her to become self-supporting.

Next, we must determine whether Judge Covey's award of maintenance in gross terminated on the petitioner's remarriage pursuant to section 510(b) of the IMDMA. In this regard, section 510(b) must be read in conjunction with section 504(b).

We are unaware of any cases interpreting section 504(b) as amended by Public Act 82—716 and section 510(b) as amended by Public Act 82—194 that have determined whether awards of maintenance in gross are terminated by operation of law upon the recipient's remarriage.

Subsequent to the passage of the IMDMA in 1977, it was unclear whether maintenance in gross/alimony in gross awards were authorized by the Act. (See Ill. Ann. Stat., ch. 40, par. 504, Supplement to Historical and Practical Notes, at 83-84 (Smith-Hurd 1983).) Section 18 of the prior act, "An Act to revise the law in relation to divorce" (Ill. Rev. Stat. 1975, ch. 40, par. 19), entitled the recipient to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree regardless of the death of either party or remarriage of the recipient. That led this court to hold in

*Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 896-97, 416 N.E.2d 366, 369, that the absence of such a provision effectively eliminated alimony in gross, although section 504(b) did provide and still provides that maintenance should be "in such amounts and for such periods of time" as a court deems just.

We believe that the amendment to section 504(b) of the IMDMA, for the first time since 1977, gives courts statutory authority to award maintenance in gross. Section 504(b) as amended provides that maintenance may be in gross. As previously noted, the nomenclature of the IMDMA does not include the term alimony. Instead the Act refers to maintenance (Ill. Rev. Stat. 1981, ch. 40, par. 504), a term previously considered the equivalent to periodic alimony. *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 896, 416 N.E.2d 366, 369.

■ We interpret maintenance in gross as provided for in new section 504(b) to be equivalent to alimony in gross. By definition, awards of maintenance in gross are not modifiable. Therefore, even in the absence of a separate written separation agreement by the parties, the provision in section 510(b) terminating a spouse's obligation to pay future maintenance upon the recipient's remarriage does not apply to maintenance in gross. Section 510(b) does not state that all maintenance (periodic maintenance, maintenance in gross, property settlement payments, and contractual support), terminates upon remarriage. Rather, section 510(b) is specifically limited to "future maintenance." If we were to interpret section 510(b) as terminating all maintenance, including maintenance in gross, upon remarriage in the absence of a written separation agreement by the parties stating otherwise, then section 510(b) would effectively eliminate what section 504(b) as amended now specifically authorizes.

The respondent argues that Judge Courson's interpretation and construction of the Second Modified Order must be upheld unless it is found to be contrary to the manifest weight of the evidence. However, a question of law is involved here. We do not believe that Judge Courson misinterpreted the facts in this case. Rather, Judge Courson interpreted section 510(b) of the IMDMA to mean that *all* maintenance terminates on remarriage unless parties agree otherwise in a written separation agreement set out in the judgment or otherwise approved by the court. We believe that he erred.

At the final hearing on December 21, 1982, Judge Courson stated:

> "THE COURT: *** Status of the law is that unless agreed by the parties, written, set forth in the judgment, or otherwise approved by the Court, I think that it means the parties have to agree that maintenance is going to continue beyond mar-

riage.

In reviewing the judgment orders before the Court, these were not the result of agreements between the parties. We're under the law that exists at this time, I don't think the Court has any choice to deem subsequent to August 21, 1982, the obligation to pay maintenance ceases. That would be the ruling of the Court on those particular matters.

Now—

MR. HUFF: [Petitioner's Attorney] I thought the statute indicates or otherwise approved by the Court?

THE COURT: Agreement set forth in writing or agreement otherwise approved by the Court. It has to come by way of agreement by the parties. That's my understanding of the law. And I think maintenance payments are terminated by operation of law when the marriage to Mr. Davis took place on August 21st. That would be the September payment and all subsequent payments."

Obviously, Judge Courson considered the language in section 510(b) which terminates future maintenance on remarriage without also giving consideration to the language in section 504(b), as amended by Public Act 82—716, which specifically authorizes maintenance in gross. We do note, though, that at the final hearing there were several matters before Judge Courson in addition to the question of terminating the maintenance award. Judge Courson simply summarily addressed the maintenance issue according to his interpretation of section 510(b).

■ In its Second Modified Order, Judge Covey ordered that the respondent pay maintenance in gross to the petitioner at the rate of $750 per month for a total of 36 months. Allowing the respondent to meet his obligation over a period of three years does not transform the nature of the award from maintenance in gross to future maintenance. It would be a harsh rule that would require one spouse to pay the full amount at one time for the award to qualify as nonmodifiable maintenance in gross. If this were the rule it would, in effect, deprive one spouse of maintenance in gross if the other spouse could not meet the entire obligation in one payment. (*Walters v. Walters* (1950), 341 Ill. App. 561, 571, 94 N.E.2d 726, 730-31.) Even though the payment of the amount awarded as maintenance in gross is postponed and is to be made in installments, we believe and hold that the right to the whole award vests in the beneficiary on the entry of the decree. *Walters v. Walters* (1950), 341 Ill. App. 561, 579, 94 N.E.2d 726, 734 (Niemeyer, P.J., specially concurring).

■ Finally, we turn to the provision in the Second Modified Order terminating the installments on the death of either party. This "death contingency" was the only substantive change made by Judge Covey from the First Modified Order. The record indicates that it was added solely for tax purposes.

Under section 215 of the Internal Revenue Code, the payor spouse is allowed to deduct maintenance payments if they are includible in the gross income of the recipient spouse under section 71. (I.R.C. secs. 215, 71 (1984).) However, where payments under a decree are to be paid over a period of 10 years or less from the date of the decree, they are generally not includible under section 71 in the recipient spouse's gross income. An exception exists if the payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the recipient, or change in the economic status of either spouse, and the payments are in the nature of alimony or an allowance for support. Treas. Reg. sec. 1.71−1(d)(3)(i) (1984).

As stated above, the main reason that Judge Covey modified the Initial Order was to award the petitioner a definite, nonmodifiable sum of money. It is also apparent that an attempt was made to provide the respondent with a tax benefit by adding the death contingency in the Second Modified Order. We have already determined that the maintenance in gross award made by Judge Covey has the same characteristics as past awards of alimony in gross. Yet, if the death contingency is given effect it will terminate the installment payments on the maintenance in gross award on the death of either party. Therefore, since maintenance in gross by definition is nonmodifiable, the death contingency must fail.

The order of the circuit court of Peoria County entered December 27, 1982, terminating the respondent's obligation to pay the balance due on the maintenance in gross award, as of the date of the petitioner's remarriage, is reversed, and the cause is remanded for hearing on the allowance and award to the petitioner of attorney fees and court costs.

Reversed and remanded.

STOUDER, P.J., and HEIPLE, J., concur.