(No. 60550.—

*In re* MARRIAGE OF CAROLYN A. FREEMAN, n/k/a
Carolyn A. Davis, Appellee, and GERALD C. FREE-
MAN, Appellant.

*Opinion filed March 22, 1985.—Modified on denial
of rehearing May 31, 1985.*

Franklin L. Renner, of O'Hern, Wombacher, Moon & Renner, of Peoria, for appellant.

Raymond L. Huff, of Peoria, for appellee.

JUSTICE SIMON, delivered the opinion of the court:

In this case we are called upon to decide whether an award of payments to an ex-spouse should be classified as periodic maintenance or maintenance in gross under the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1983, ch. 40, par. 503), and whether the award must terminate upon the spouse's remarriage (Ill. Rev. Stat. 1983, ch. 40, par. 510(b).). When Gerald C. Freeman (Gerald) did not make the monthly payments provided for by order, his former wife, Carolyn A. Davis, formerly Carolyn A. Freeman (Carolyn) applied in the circuit court of Peoria County for a rule to show cause requiring him to pay. Gerald applied for a rule to show cause terminating the payments as of August 21, 1982, the date of Carolyn's remarriage. Gerald's motion for substitution of judges was allowed, and the substituted judge, Donald Courson, held that, as a matter of law, the payments terminated as of the date of Carolyn's remarriage. The appellate court reversed. (124 Ill. App. 3d 1088.) We allowed Gerald's petition for leave to appeal (87 Ill. 2d R. 315).

The marriage was dissolved on March 18, 1982. A series of orders dealing with property division, custody, maintenance, and child support followed. The original order issued by Judge Stephen Covey and dated May 3, 1982, provided:

> "For maintenance of the Petitioner, the Respondent shall make payments to her for a period of thirty-six (36) months in the following manner: the sum of Seven Hundred and Fifty Dollars ($750) during the period of time she is receiving unemployment insurance payments and Eight Hundred and Fifty Dollars ($850) per month when said payments terminate except that such payments shall cease upon the remarriage of the Petitioner, death of ei-

ther party, continuous cohabitation with another person by Petitioner or upon further order of Court after a change in economic status of either party justifies a change. Such payments are solely for the maintenance of the Petitioner."

In a post-trial motion, Carolyn objected that she should have been awarded "alimony in gross." At the hearing on her motion, Carolyn's attorney argued that she had asked for maintenance in gross, but the court had ordered periodic maintenance, and that this should be altered. Judge Covey asked, "What is the difference if I allow her $27,000 in gross or $27,000 periodic over three years," and then answered his own question by saying, "The gross is paid regardless of remarriage." He then immediately asked if there was any income tax difference.

When the hearing was continued to a later date, Judge Covey asked if there was any reason why Gerald should continue to pay if Carolyn remarried. Carolyn's attorney responded that the relative positions of the parties and Gerald's possible future unwillingness to pay warranted the in-gross arrangement. Judge Covey said that the payments should be deductible by Gerald, and to accomplish that he clearly indicated that he was talking about maintenance, not a property settlement. Gerald's attorney stated that "[i]f it is payment of maintenance with conditions then it is deductible by him and payable [*sic*] by her."

On June 24, 1982, the first modified judgment was issued. The maintenance provision was replaced by the following:

"For maintenance in gross of the Petitioner the Respondent shall pay the sum of Twenty-seven Thousand Dollars ($27,000) at the rate of Seven Hundred and Fifty Dollars ($750) per month for a total of thirty-six (36) months."

On July 9, 1982, a second modified judgment was is-

sued. The same maintenance-in-gross provision was included, but this time it was followed by an additional sentence reading, "Said payments to be terminable upon the death of either Petitioner or Respondent." On August 3, Gerald moved for rehearing on the issue of "alimony in gross," but he later withdrew that motion.

Should this award be considered as maintenance in gross? Before the enactment of the Act, prior Illinois law provided for "alimony in gross" which could be awarded in lieu of periodic alimony. (See, *e.g.*, Ill. Rev. Stat. 1975, ch. 40, par. 19.) Alimony in gross was treated as a property settlement. Although it was frequently payable in installments, it was the award of a sum certain which created a vested interest in the recipient. (*Walters v. Walters* (1951), 409 Ill. 298.) In contrast to periodic alimony, alimony in gross was nonmodifiable and was therefore payable regardless of the remarriage of either party. 409 Ill. 2d 298, 302.

When the new statute was enacted in 1977, it included no specific provision for alimony in gross. It contained separate sections dealing with property settlements and with maintenance, the new term for what was formerly called alimony. (Ill. Rev. Stat. 1981, ch. 40, pars. 503, 504.) In addition, section 510(b) provided:

> "[T]he obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." Ill. Rev. Stat. 1981, ch. 40, par. 510(b).

Although this court has never considered whether maintenance in gross was payable under the Act, the appellate court concluded that maintenance in gross could be awarded under the Act pursuant to the trial court's authority to award maintenance " 'in such amounts and for such periods of time as the court deems just ***.' "

(*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 680, quoting Ill. Rev. Stat. 1977, ch. 40, par. 504(b).) The appellate court has also described an award of maintenance in gross as in the nature of a property settlement, and therefore nonmodifiable. *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893; *Pacione v. Pacione* (1980), 81 Ill. App. 3d 600.

In any event, the Act was amended during the pendency of these proceedings in the circuit court, and clearly the amended sections control here. Section 504(b) provides, as of July 1, 1982:

> "(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, \*\*\* *and may be in gross or for fixed or indefinite periods of time* \*\*\*." (Additions indicated by italics.) Ill. Rev. Stat. 1983, ch. 40, par. 504(b).

Section 510(b) provides, as of January 1, 1982:

> "(b) *Unless otherwise agreed by the parties in a written separation agreement set forth in the judgment or otherwise approved by the court,* the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance \*\*\*." (Additions indicated by italics.) Ill. Rev. Stat. 1983, ch. 40, par. 510(b).

There can be no doubt that Judge Covey intended to award maintenance in gross. There is no other explanation for his change from the original order which awarded periodic maintenance, specifically terminable upon the death or remarriage of either party, to the first and second modified orders, both of which use the term "maintenance in gross" and which do not mention termination because of remarriage. The first modification was in response to Carolyn's request that the maintenance be in gross. The second modification was in response to Gerald's concern that the payments be deductible to him and income to Carolyn. Since Gerald's attorney argued

that this would be possible if the payments were described as "maintenance" with "conditions" upon them, Judge Covey apparently decided to maintain the label of maintenance in gross, but impose the condition that the payments terminate upon the death of either party. At this point, Judge Covey could have also included a condition terminating the payments on Carolyn's remarriage. Since the possibility of Carolyn's eventual remarriage was discussed, we conclude that Judge Covey specifically decided that the payments should not be terminable on remarriage.

Gerald argues to this court that regardless of Judge Covey's intent, the Act grants no authority to provide maintenance in gross beyond the date of Carolyn's remarriage. Gerald reads section 510(b) together with section 504(b) to mean that all forms of maintenance terminate upon the remarriage of the receiving party, unless there is an agreement by the parties either embodied in the separation agreement or otherwise approved by the court. Judge Courson, the substituted judge, agreed with Gerald. He ruled that section 510(b) required, as a matter of law, that the payments terminate on Carolyn's remarriage, since the parties had not agreed otherwise in this case. The appellate court disagreed, holding that maintenance in gross under the Act is equivalent to alimony in gross under the former statute, and is therefore nonmodifiable. Because the condition terminating the payments on the death of either party was an attempt at modification, the appellate court struck that language from the order. 124 Ill. App. 3d 1088.

When construing a statute, our primary objective is to ascertain the intent of the legislature. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 310.) We must, wherever possible, attribute some reasonable meaning to every word, clause, or section of a statute. (*Cosmopolitan National*

*Bank v. County of Cook* (1984), 103 Ill. 2d 302, 313; *People v. Warren* (1977), 69 Ill. 2d 620, 627; *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 466.) We presume, further, that every amendment is made for some purpose, and we must give effect to the amendment in a manner consistent with that purpose. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 563.) If maintenance in gross were no different than periodic maintenance, the amendment stating that maintenance may be in gross would have added nothing to the meaning of section 504(b). We believe this requires us to give the phrase "maintenance in gross" the meaning which "alimony in gross" has traditionally had in Illinois, a nonmodifiable sum certain to be received by the former spouse regardless of changes in circumstances. *Walters v. Walters* (1951), 409 Ill. 298.

Section 504(b) states that maintenance "may" be in gross. Except in very unusual circumstances affecting the public interest, the legislative use of the word "may" is permissive rather than mandatory. (*Boddiker v. McPartlin* (1942), 379 Ill. 567, 578.) The effect of section 504(b), then, is merely to authorize the trial judge to award maintenance in gross if he finds it to be appropriate in a particular case.

We do not find Gerald's suggestion that there is an inconsistency between sections 504(b) and 510(b) persuasive. According to section 510(b), future maintenance payments terminate on remarriage except for two possibilities. The first possibility is that the parties agree otherwise in a written separation agreement. That is not the case here. The second possibility is that another arrangement is "approved by the court," and that did occur here. Judge Covey changed his written order from maintenance which terminated upon death or remarriage to maintenance in gross, terminable upon death of either party, but with no mention of remarriage.

Maintenance in gross is a form of maintenance which does not terminate automatically on the remarriage of the receiving party. Since Judge Covey ordered maintenance in gross in this case after having discussed the possibility of Carolyn's remarriage, he "approved" the arrangement, under the authority given the court by section 510(b).

Judge Courson misconstrued the phrase "otherwise approved by this court" when he read it to modify the word "agreement" in section 510. That reading violates the basic canon of statutory construction that, ordinarily, relative or qualifying words or clauses modify words or phrases which are immediately preceding and do not modify those which are more remote. (*People v. Thomas* (1970), 45 Ill. 2d 68, 72.) We follow that rule and conclude that the legislature intended to allow future maintenance to survive the remarriage of the receiving party if the judge approves.

Finally, we refer to the death contingency clause. We do not agree with the appellate court that since maintenance in gross ordinarily is not modifiable upon death that the contingency must be struck in order for the award to survive. One major purpose of the Act is to provide more equitable property and maintenance arrangements than were possible under the old law. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576.) Section 504(b) allows the trial court to award maintenance as is "just" under the circumstances. The second modified order in this case can best be understood as a compromise, aimed at the most just result for both parties. Judge Covey wanted Carolyn to continue receiving payments even if she remarried; that is why he changed the label on the award to "maintenance in gross." However, Judge Covey also wanted Gerald to be eligible to deduct the payments he was required to make, and by imposing the death condition in the second modified order Judge

Covey thought he was making it possible for Gerald to do that. Although the order may not have been perfectly clear, Judge Covey's intentions are a good example of the individual fashioning of remedy which is now possible under the Act. Were we to hold that maintenance in gross could never be combined with any other conditions that might terminate it, we would destroy much of the flexibility which the Act was intended to foster. Instead, we hold that this award is maintenance in gross, with all the characteristics of maintenance in gross, except where expressly stated otherwise. In other words, because it is maintenance in gross, the payments do not terminate upon Carolyn's remarriage, but because the order expressly indicates, the payments do terminate upon the death of either Carolyn or Gerald. We also conclude, of course, that the trial judge was authorized to enter such an order by section 510(b) even in the absence of an agreement for such termination in a written separation agreement.

For the reasons explained above, the judgment of the appellate court is affirmed as modified, and the judgment of the circuit court is reversed. The cause is remanded with directions to reinstate the award and to direct Gerald to pay the arrearages to Carolyn and, as the appellate court ordered, for hearing on the allowance and award to the petitioner of attorney fees and court costs and for such further proceedings not inconsistent with this opinion as may be appropriate.

*Appellate court affirmed, as modified;*
*circuit court reversed; cause*
*remanded, with directions.*