ALEXANDER B. MAGNUS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Magnus v. Commissioner
Docket No. 28976-88.
United States Tax Court
T.C. Memo 1990-596; 1990 Tax Ct. Memo LEXIS 665; 60 T.C.M. (CCH) 1296; T.C.M. (RIA) 90596; November 21, 1990, Filed *665 Decision will be entered for the respondent. Pursuant to an agreement incident to his Illinois divorce decree, petitioner was obligated to pay his ex-wife $ 100,000 as nonmodifiable maintenance in gross. Petitioner could have discharged that obligation in installments, by making 12 equal monthly payments, or by making quarterly, semi-annual, or annual payments. Petitioner chose to make one payment, of $ 100,000, which he made contemporaneously with entering into the agreement and entrance of the divorce decree. Held: A lump-sum payment of maintenance in gross is not a periodic payment within the meaning of section 71 and is therefore not deductible to petitioner under section 215. Held further: Petitioner is liable for the additions to tax set forth in sections 6651(a)(1) and 6661. Shelby H. Kanarish, for the petitioner. James F. Hanley and John Q. Walsh, for the respondent. HALPERN, Judge. HALPERN
MEMORANDUM OPINION * *668 This case involves petitioner's liability for Federal income tax and additions thereto for the calendar year 1983. Respondent determined a deficiency for that year of $ 17,896 and additions to tax of $ 3,839 under section 6651(a)(1), [1] for failure to timely file a return, and of $ 4,474 under section 6661, for a substantial understatement of income tax. The issues for decision are: (1) whether a $ 100,000 lump-sum payment by petitioner to his ex-wife pursuant to a written agreement incident to a decree of divorce is a "periodic payment" within the language of section 71, and (2) whether petitioner is liable for the additions to tax for failure timely to file a return and for a substantial understatement of income tax. As a preliminary matter, we note that in his notice of deficiency, respondent disallowed approximately $ 107,000 in Schedule C repair expenses claimed by petitioner in his 1983 return. In his petition, petitioner disputes only the tax and additions to tax relating to the disallowance of the $ 100,000 alimony deduction claimed by petitioner. In his answer, respondent alleges that the full deficiency determined by him is in dispute. Deductions are a matter of legislative grace, entitlement to which the taxpayer has the burden of proving. New Colonial Ice v. Helvering, 292 U.S. 435 (1934); Rule 142(a). Outside of his petition, petitioner has not addressed the repair expenses. Petitioner proffered no testimony or other evidence pertaining to the repair expense issue, and he made no arguments on the matter in his brief or reply brief. Accordingly, we conclude *669 that petitioner has conceded that issue and we do not address it here. [2]
BACKGROUND The facts are not in dispute. When called for trial, the parties requested the Court to decide the case based on a stipulation of facts. That stipulation and accompanying exhibits are incorporated herein by this reference. Petitioner, a cash-method, calendar year taxpayer, resided in Arlington Heights, Illinois, at the time of filing his petition. Petitioner and his ex-wife, Elsbeth M. Magnus, were granted a decree of divorce by the Circuit Court of Cook County, Illinois, Domestic Relations Division, on July 19, 1983. The court made no specific findings pertaining to a division of property between the former spouses, or to maintenance or support for petitioner's former wife. However, *670 the court incorporated into its decree and judgment a Memorandum of Agreement (the Agreement), entered into on that same date, in which petitioner and Elsbeth Magnus set forth their negotiated settlement pertaining to the questions of maintenance and property rights. With regard to maintenance, the Agreement provides: G. (5) MAINTENANCE
A. Husband hereby waives and releases his right to seek maintenance from wife, past, present and future. B. 1. Commencing upon the entry of a Judgment for Dissolution of Marriage and continuing on the first day of each month thereafter, husband shall pay to wife as and for non-modifiable maintenance in gross the sum of One Hundred Thousand Dollars ($ 100,000.00) payable in twelve (12) equal monthly installments of Eight Thousand Three Hundred Thirty Three Dollars and Thirty Three Cents ($ 8,333.33). Said payments shall be non-modifiable and shall be includable as income to wife and deductible by husband in accordance with the Internal Revenue Code in such case made and provided. 2. That said payments as and for maintenance shall terminate when payment in full is made by the husband. 3. Husband shall have the right, *671 at his sole option, to prepay all sums due wife hereunder by means of quarterly, semi-annual, or annual payments so long as husband's prepayment thereof does not increase wife's tax liability upon the sum so prepaid. In the absence of said prepayment by husband, he shall pay in advance one-twelfth (1/12) of the annual sum due wife on the 1st day of each month succeeding the month in which a Judgment for Dissolution of Marriage is entered. 4. Upon payment in full by husband, wife's right to seek and receive maintenance from husband shall be forever barred and terminated. On or about July 19, 1983, the date on which was entered the decree dissolving petitioner's marriage, petitioner discharged his obligation under the provision above set forth (the Maintenance Provision) by paying to Elsbeth Magnus $ 100,000, in one lump sum. On line 28 of Form 1040 of his 1983 return, petitioner claimed a deduction for alimony paid of $ 100,000. No further description or explanation of that deduction appears in petitioner's return or on any attachment to the return. Petitioner signed his 1983 return on April 5, 1985. The return bears a stamp indicating that it was received by respondent on *672 April 29, 1985. Elsbeth Magnus did not report the $ 100,000 payment as income on her Federal income tax return for 1983. DISCUSSION Deductibility of $ 100,000 Payment
Question at Issue
It is generally understood that payments of alimony are deductible to the paying spouse (usually the ex-husband) and includable in income by the recipient spouse (usually the ex-wife). The axis along which that statement runs connects, at one end, section 215 and, at the other, section 71. In pertinent part, section 215(a) provides that: "In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife." Section 71(a)(1) provides, in pertinent part, that: "If a wife is divorced * * * under a decree of divorce * * *, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation * * * imposed on * * * the husband under the decree." [Emphasis added.] The question before us simply is whether or not petitioner's payment of $ 100,000 to his ex-wife constituted a periodic payment within the *673 language of section 71. If it did, then petitioner is entitled to the deduction claimed on his return for alimony paid; if it did not, then he is not. Not a Periodic Payment
Pursuant to the Agreement, petitioner was obligated to pay to his ex-wife maintenance of $ 100,000. The Maintenance Provision afforded petitioner flexibility in discharging that obligation. Petitioner could have discharged it in installments, by making 12 equal monthly payments, or by making quarterly, semi-annual, or annual payments. Petitioner chose to make one payment, of $ 100,000. He made that payment on or about July 19, 1983, the day on which he and his ex-wife entered into the Agreement and on which was entered the judgment (incorporating the Agreement) dissolving his marriage. It is difficult for us to see how such a single payment can be described as periodic. Indeed, almost 50 years ago, this Court, in interpreting the word "periodic" in a predecessor to section 71, stated that: "The word periodic is to be taken in its ordinary meaning and so considered excludes a payment not to be made at fixed intervals but in a lump sum." Norton v. Commissioner, 16 T.C. 1216, 1218 (1951), *674 affd. 192 F.2d 960 (8th Cir. 1951).Norton has been followed in numerous decisions. Sechrest v. Commissioner, 490 F.2d 102 (4th Cir.), cert. denied 419 U.S. 826 (1974); Lundgaard v. United States, 346 F. Supp. 1351 (D. Kans. 1972); Hardy v. Commissioner, 59 T.C. 857 (1973); Senter v. Commissioner, 25 T.C. 1204 (1956), affd. 242 F.2d 400 (4th Cir. 1957); Nemetz v. Commissioner, T.C. Memo. 1983-676; Collins v. Commissioner, T.C. Memo. 1979-508. In Norton, the payment in question (additional alimony) was, under the terms of an agreement, to be paid in a lump sum. No deduction was allowed. The agreement in Norton did not (as here) provide the option of installment payments. However, we cannot see how the mere existence of an option to make installment payments, which option petitioner did not elect to exercise, can make the lump-sum payment here any more periodic than was the lump-sum payment in Norton. Petitioner made one payment, which fully discharged his obligation. There was no condition under which, following that single *675 payment, petitioner could have been called upon to make another payment. The situation here cannot fairly be distinguished from that in Norton, and we can see no reason not to follow our decision in that case. Thus, we hold that the payment made by petitioner was nonperiodic; because nonperiodic, the payment is not, under section 71, of the type includable in the income of petitioner's ex-wife nor, under section 215, deductible by him. Petitioner's Argument
Before turning to respondent's determinations of additions to tax, we wish to dispose of the principal argument made by petitioner. Petitioner, on brief, has failed to discuss Norton . Petitioner does argue, however, that his payment should be considered periodic for purposes of section 71(a)(1) since his obligation to make such payment was contingent on, among other factors, his death, the death of his ex-wife, or her remarriage. See sec. 1.71-1(d)(3)(i), Income Tax Regs. Petitioner directs us to the Illinois Marriage and Dissolution of Marriage Act (the Illinois Act) which in pertinent part provides that, unless otherwise agreed by the parties, an obligation to pay further maintenance is terminated on, *676 among other factors, the death of either party or the remarriage of the recipient. Ill. Ann. Stat. ch. 40, par. 510(b) (Smith-Hurd 1989 Supp.). Respondent counters that no such contingencies were imposed by the Illinois Act since the parties had agreed otherwise by providing in the Agreement for "non-modifiable maintenance in gross" and the divorce court, in its judgment, did not provide otherwise. Respondent directs us to an Illinois Supreme Court case for the proposition that, when an agreement provides for nonmodifiable maintenance in gross, such maintenance in gross does not terminate upon the remarriage of the recipient or upon any other contingency or terminating event set forth in section 510(b) of the Illinois Act, except as expressly set forth in the judgment of the divorce court. In Re Marriage of Freeman, 106 Ill. 2d 290, 478 N.E. 2d 326 (1985).We agree with respondent that the Agreement, in providing for nonmodifiable maintenance in gross, eliminated the contingencies set forth in section 510(b) of the Illinois Act, and that the divorce court did not reimpose such contingencies. However, we do not think that the outcome here turns on a resolution of *677 those issues of Illinois law. Petitioner discharged his maintenance obligation by paying to his ex-wife $ 100,000 in a lump sum. The parties have agreed on brief that petitioner made that lump-sum payment on or about July 19, 1983. Thus, the Agreement was entered into on July 19, 1983, the decree and judgment dissolving petitioner's marriage was entered by the court on that same date, and on or about that same date petitioner discharged his maintenance obligation by paying to his ex-wife, in one lump sum, $ 100,000. From those facts, we conclude that petitioner contemporaneously both obligated himself to pay $ 100,000 and acted to discharge that obligation. Because contemporaneous, no condition, not even the passage of time, could have intervened to excuse (or delay) petitioner's payment. Petitioner's payment was, when made, not subject to any contingency and, thus, on the force of petitioner's own argument, not periodic. See sec. 1.71-(d)(3)(i), Income Tax Regs. Petitioner's argument fails. The fact that petitioner apparently had the right, under the Agreement, to discharge his obligation by making installment payments that, if they were contingent, would have *678 entitled petitioner to a deduction does not change the fact that the lump-sum payment he did make was not subject to any contingency. Additions to Tax
Section 6651(a)(1)
Section 6651(a)(1) imposes an addition to tax for the delinquent filing of an income tax return. The amount of the addition is 5 percent of the amount of tax due for each month, up to 5 months, that the return is delinquent. No addition is imposed if the taxpayer can show that the delinquency is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). Petitioner was a calendar-year taxpayer. Accordingly, unless an extension of time to file had been granted, petitioner's 1983 return was due on April 15, 1984. See secs. 6072(a) and 6081(a). Petitioner signed his 1983 Federal income tax return on April 5, 1985 (almost 1 year after the due date). The return bears a stamp indicating that it was received by the Internal Revenue Service on April 29, 1985. Petitioner's sole argument on this issue is that he is not liable for the addition if he is not liable for the underlying deficiency. We have held petitioner liable for the deficiency, and petitioner has failed to offer any evidence *679 that an extension of time to file was in effect, or that his late filing was due to reasonable cause and lack of willful neglect. The burden of proof is on petitioner to show that he is not liable for the addition determined by respondent. Rule 142(a). Petitioner has not carried that burden. Therefore, respondent's determination of the section 6651(a)(1) addition will be sustained. Section 6661
Respondent also has determined that petitioner substantially understated his income tax liability and is liable for the addition to tax set forth in section 6661. The amount of an addition to tax for a substantial understatement of income tax for a taxable year (which addition is assessed after October 21, 1986) is equal to 25 percent of the amount of any underpayment attributable to such substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988).For the year in issue, a substantial understatement is an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). Petitioner's understatement is substantial and he is thus liable *680 for the section 6661 addition determined by respondent unless petitioner can demonstrate that the understatement must be reduced because substantial authority supported the position taken by petitioner or he adequately disclosed in his return or in a statement attached to the return the relevant facts of that position. See sec. 6661(b)(2)(B). The term understatement is defined in section 6661(b)(2)(A). For the reasons set forth below, we hold that petitioner does not qualify for a reduction of the section 6661 addition to tax. [3]
*681 Section 6661(b)(2)(B) provides that an understatement is to be reduced by that portion of the understatement attributable to: (1) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment; or (2) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(i) and (ii). A special rule, not relevant here, applies in cases involving tax shelters. See sec. 6661(b)(2)(C). We look first at the alternative of adequate disclosure. With regard to disclosure on an attached statement, the regulations provide that disclosure is inadequate unless it reasonably may be expected to apprise the Internal Revenue Service of the identity of an item, its amount, and the nature of the potential controversy concerning the item. Sec. 1.6661-4(b)(3), Income Tax Regs. With regard to disclosure in the return, revenue procedures indicate the same. See Rev. Proc. 85-19, 1985-1 C.B. 520; Rev. Proc. 84-19, 1984-1 C.B. 433. We have examined petitioner's 1983 return and have found that, on line 28 of Form 1040, *682 "$ 100,000" is entered as the amount of deductible alimony paid in that year. No further statement or explanation of that payment appears anywhere in petitioner's return or on any attachment to the return. Nowhere does petitioner disclose the potentiality or nature of any controversy concerning his claimed alimony deduction. Therefore, petitioner's disclosure is inadequate, and does not satisfy the requirements of section 6661(b)(2)(B)(ii). See Hutchinson v. Commissioner, T.C. Memo. 1989-114. Looking next for substantial authority to support petitioner's treatment of the item in question, we find none. There is substantial authority for the tax treatment of an item if the weight of the authorities supporting that tax treatment is substantial in relation to the authorities supporting the contrary position. Sec. 1.6661-3(b)(1), Income Tax Regs. Thus, for petitioner to prevail, we first must examine the authorities dealing with the deductibility of a lump-sum payment made by an ex-spouse in discharge of that spouse's obligation to pay maintenance. We then must conclude that the weight of the authorities supporting such deductibility is substantial in relation *683 to the weight of the authorities to the contrary. We cannot here reach that conclusion. Our discussion, supra, bears that out. The authority contrary to petitioner's position is substantial. See Norton v. Commissioner, 16 T.C. 1216 (1951), affd. 192 F.2d 960 (8th Cir. 1951), and its progeny. There is no authority in support of petitioner's position. Petitioner's reliance (described in his brief) on his accountant in the preparation of his return does not constitute authority for purposes of section 6661. See sec. 1.6661-3(b)(2), Income Tax Regs. Accordingly, petitioner cannot prevail. Finally, petitioner argues that, notwithstanding the existence of a substantial understatement, respondent should have exercised the discretion provided to him by section 6661(c) to waive the addition to tax provided for in section 6661. Section 6661(c) provides that the Secretary may waive all or any part of the section 6661 addition to tax on a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Respondent's refusal to grant a waiver of the section 6661 addition is subject to judicial *684 review for abuse of discretion. Mailman v. Commissioner,91 T.C. 1079, 1082-1084 (1988). Initially, we note that, here, there is no evidence that petitioner ever formally submitted any materials to respondent showing reasonable cause and good faith or otherwise requesting a waiver. Moreover, unlike the situation in Mailman, there is no evidence in this case from which we can conclude that petitioner submitted enough materials to respondent during the administrative handling of petitioner's case to support an inference that respondent considered a waiver. See Mailman v. Commissioner, supra at 1084.Therefore, we cannot presume that respondent made a determination on whether petitioner had reasonable cause for, and acted in good faith in making, his understatement. We cannot find that respondent abused his discretion here when, for all that the record establishes, he was not requested to exercise it. See Lapin v. Commissioner, T.C. Memo. 1990-343.Moreover, the most important factor in determining reasonable cause and good faith is "the extent of the taxpayer's effort to assess [his] proper tax liability under the law. *685 " Sec. 1.6661-6(b), Income Tax Regs.; Mailman v Commissioner, supra at 1084.Petitioner (on brief) claims that he relied on the allocation of the tax consequences in the Agreement and on the advice of a professional accountant. Such reliance, in petitioner's mind, constitutes reasonable cause and good faith. We disagree. For purposes of section 6661(c), reliance on the advice of a professional accountant, or reliance on other facts, may constitute a showing of a reasonable cause or good faith. Such reliance would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6661-6(b), Income Tax Regs. Petitioner has presented no evidence of the facts surrounding his reliance and from which we might conclude that such reliance was reasonable and that petitioner acted in good faith. Thus, assuming arguendo that petitioner did request a waiver under section 6661(c), petitioner has not satisfied his burden of proving that respondent abused his discretion in determining that no reasonable cause or good faith existed for the understatement on petitioner's 1983 return. *686 See Mailman v. Commissioner, supra at 1084-1085; Rule 142(a). Respondent's determination of the section 6661 addition will be sustained. For all the foregoing reasons, Decision will be entered for the respondent. Footnotes
*. By Order of the Chief Judge, this case was reassigned to Judge James S. Halpern↩ for disposition.
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Had respondent's counsel been more particular in drafting his answer, the Court may well have been saved the bother of dealing with this issue as if it were in dispute. A word to the wise should be sufficient. See Rules 36(b) and 33(b).↩
3. As a preliminary matter, we concluded that petitioner conceded that part of the deficiency determined by respondent and relating to the disallowed Schedule C repair expenses. The understatement here giving rise to the addition to tax determined by respondent includes, as a component part, an element allocable to that conceded portion of the deficiency. Petitioner nowhere addresses that element. Petitioner's arguments seem to be premised on the assumption that the whole understatement results from the disallowance of the claimed alimony deduction. We interpret petitioner's pleadings and arguments as a concession with regard to that part of the addition to tax allocable to the disallowed Schedule C repair expense. The discussion that follows is restricted only to that part of the addition to tax allocable to the disallowed alimony expense.↩