*In re* MARRIAGE OF WILLIAM E. SCHLOSSER, Petitioner-Appellant, and MARY L. SCHLOSSER, Respondent-Appellee.

Third District    No. 3—92—0213

Opinion filed January 26, 1993.

Carl F. Reardon, of Reardon, Orr & Dvorak, Ltd., of East Peoria, for appellant.

Lisa M. Olivero, of Peru, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The marriage of petitioner William E. Schlosser and respondent Mary L. Schlosser was dissolved by the circuit court of Putnam County on September 14, 1988. The matter proceeded to a phase II hearing for maintenance and distribution of marital property on October 16, 1990, and judgment was entered thereon on January 24, 1992. William filed a post-trial motion for a rehearing and other relief. On February 14, 1992, the court denied the relief requested, but entered an order clarifying certain aspects of the January 24 order. William appeals from the orders entered on January 24 and February 14, 1992. We affirm.

William initially takes exception with the circuit court's distribution of marital assets and debts. By statute, the division of marital

property must be in "just proportions" after consideration of all relevant factors. (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) "Just proportions" does not mean mathematical equality, and there is no requirement that the trial court recite the specific factors the court relied upon in reaching its distribution decision. We have repeatedly stated that the trial court is vested with broad discretion in apportioning marital property, and that the court's property distribution may be reversed on appeal only upon a showing of an abuse of discretion. An "abuse of discretion occurs only when no reasonable man could take the view adopted by the trial court." *In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 911, 601 N.E.2d 298, 301.

In this case, the court's phase II order, as modified, provides for William's payment to Mary of $300 per month for three years for a total of $10,800 as maintenance in gross and a lump sum property award of $7,000. The lump sum payment, according to the January 24 order, represented Mary's share of marital property consisting of William's "50% interest in a tenant farming operation, his *** 50% partnership interest in the cattle that he has been grooming on behalf of a certain witness that testified in Court, and various marital and household furniture, furnishings, fixtures and appliances which are still located in the marital home where [William] resides." William posits that testimony at the phase II hearing established that the parties actually had a negative net worth of $21,000, consisting of marital assets worth $12,000, less an outstanding farm debt to which the parties stipulated in the amount of $33,000. Thus, he argues, the court's award to Mary of 58% of the marital assets and none of the marital debts is inequitable.

In fact, the value of the marital estate, particularly the value of William's farming interests, was a matter of considerable dispute in the trial court. Mary introduced evidence tending to establish that William owned a 50% partnership interest in certain cattle, which William denied. There was also contradictory evidence on the profitability of the farming operation at the time of the dissolution of marriage in 1988. William's tax returns were admitted into evidence and tend to support Mary's contention that William's claimed debts as of July 1988 were inflated or "paper deductions" which did not translate into actual marital indebtedness. The factual issues presented by the parties' conflicting testimony were resolved by the trial court for reasons expressed in its order of February 14, 1992, denying William's motion for post-judgment relief. There, the court concluded, "The motion is *** denied, based on the evidence and the court's conclusion

that the plaintiff was not a credible witness when testifying about his financial condition."

■ The credibility of witnesses is particularly within the purview of the trier of fact. Where, as here, disputed evidence may be resolved on the basis of witness credibility, this court should be loathe to disturb the trial court's factual finding. It is apparent to us that the trial court in this case did not find credible evidence of marital indebtedness. Based on our review of the record on appeal, we cannot say that the trial court's finding entitling Mary to a lump sum property award of $7,000 without assigning her any part of William's claimed indebtedness from the farm operation is so unreasonable as to be an abuse of the court's discretion. Accordingly, we affirm the court's property distribution order.

Next, William charges error in the trial court's award of maintenance to Mary. An award of maintenance is governed by section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 504). The factors to be considered are whether the spouse seeking an award:

> "(1) lacks sufficient property, including marital property apportioned to [her], to provide for [her] reasonable needs, and
>
> (2) is unable to support [herself] through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or
>
> (3) is otherwise without sufficient income." (Ill. Rev. Stat. 1991, ch. 40, par. 504(a).)

The statute further provides that maintenance may be "in gross or for fixed or indefinite periods of time," and from the income or property of the paying spouse after consideration of "all relevant factors." The statute then recites a seven-item, nonexclusive list of relevant factors bearing on the issue of spousal maintenance. Ill. Rev. Stat. 1991, ch. 40, par. 504(b).

■ William contends that the only factor considered by the trial court in this case was Mary's inability to support herself through appropriate employment. Were this true, we would agree that the court erred; however, our review of the record supports Mary's position that, although not recited in its January 24 order, the court also considered substantial evidence that she lacked sufficient property to provide for her reasonable needs or was without sufficient income. Thus, we find no merit to William's argument that the court's award of maintenance was unauthorized in this case.

William's argument in the alternative is that the court erred in making the maintenance award nonmodifiable. In its phase II order of January 24, the court characterized its sum-certain maintenance award both as "nonmodifiable" and as "rehabilitative maintenance." However, in its February 14, 1992, "clarification" of the January 24 order, the court specifically stated that the award was "in gross." By definition, an award of maintenance in gross is a fixed sum in the nature of a property settlement and is nonmodifiable. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297, 478 N.E.2d 326, 329.) In *Freeman*, the court interpreted the legislative intent of section 504(b)'s reference to maintenance in gross. The court stated:

> "If maintenance in gross were no different than periodic maintenance, the amendment stating that maintenance may be in gross would have added nothing to the meaning of section 504(b). We believe this requires us to give the phrase 'maintenance in gross' the meaning which 'alimony in gross' has traditionally had in Illinois, a nonmodifiable sum certain to be received by the former spouse regardless of changes in circumstances. *Walters v. Walters* (1951), 409 Ill. 298[, 99 N.E.2d 342]." (106 Ill. 2d at 298.)

Maintenance in gross is not an inflexible device and may be paid in periodic installments and made terminable upon express conditions.

In this case, after considering evidence of the duration of the marriage, the standard of living during the marriage, tax consequences of the property division and other relevant factors as required by section 504, the court awarded Mary a nonmodifiable maintenance award in the sum of $10,800 payable in monthly installments of $300 over a period of three years. The court did not attach any conditions for termination of payments before the three-year period expires. Thus, it is apparent that the court intended its award to be "maintenance in gross," rather than "rehabilitative," as clarified in the court's order of February 14. Because the legislature has specifically authorized such awards (see *Freeman*, 106 Ill. 2d 290, 478 N.E.2d 326) and the record establishes that the court gave due consideration to relevant factors in rendering its decision, we find no error in the court's decision to award Mary "maintenance in gross" payable periodically and in the amount as specified in the January 24 order.

■ Lastly, William argues that the trial court erred in failing to consider evidence of his own inability to pay maintenance (Ill. Rev. Stat. 1991, ch. 40, par. 504(b)(6)). Again, however, our review of the record on appeal does not support William's position that the court's determination was contrary to the evidence. The tax returns submit-

ted for 1986 through 1989 indicate a steady increase in William's income following his 1987, predissolution bankruptcy proceedings. As aforesaid, the court did not find credible William's claims of indebtedness. In our opinion, the court did not abuse its discretion in rejecting William's position that maintenance should not be awarded based on his inability to pay.

For the reasons stated, we affirm the orders of the circuit court of Putnam County.

Affirmed.

STOUDER and SLATER, JJ., concur.