# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of D'Attomo*, 2012 IL App (1st) 111670

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF BETSY J. D'ATTOMO, Petitioner-Appellee, and JOHN J. D'ATTOMO, Respondent-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-1670 |
| Filed<br>Rehearimg denied | September 26, 2012<br>October 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial judge's ruling that home equity loan funds were an investment, not a loan, to a business started by petitioner was not against the manifest weight of the evidence, the award of maintenance in gross to petitioner was not an abuse of discretion, respondent did not rebut the presumption that the ruling on attorney fees was correct, the valuation of petitioner's business was not an abuse of discretion, any error in assessing respondent's claim of dissipation was harmless, there was no error in accounting for the parties' nonmarital property, and respondent's objection to the order for a true-up payment and a contribution to petitioner's attorney fees was rejected. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-230261; the Hon. John T. Carr, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

John J. D'Attomo, of Chicago, appellant *pro se*.

Schiller Du Canto & Fleck LLP, of Chicago (Sarane C. Siewerth and
Shannon R. Burke, of counsel), for appellee.

Panel

JUSTICE STEELE delivered the judgment of the court, with opinion.

Presiding Justice Salone and Justice Neville concurred in the judgment
and opinion.

**OPINION**

¶ 1     Respondent, John J. D'Attomo, appeals from the judgment of the circuit court of Cook County dissolving his marriage to petitioner, Betsy J. D'Attomo. John argues that the trial court erred in: (1) ruling that the home equity loan funds were an investment in a bakery started during the marriage, rather than a loan to the business; (2) awarding Betsy rehabilitative maintenance without requiring that she seek gainful employment or maintain employment commensurate with her education, experience and training; (3) failing to deem marital funds Betsy spent on attorney fees and litigation expenses as an advance against her share of the marital estate; (4) calculating the value of the bakery; (5) applying an incorrect standard to his claim that Betsy dissipated marital property; and (6) ordering a "true-up" payment and contribution to Betsy's attorney fees. For the following reasons, we affirm.

¶ 2                              BACKGROUND

¶ 3     The record on appeal discloses the following facts. The parties married on June 15, 1996, in Park Ridge, Illinois. The parties were married for 11 years when Betsy petitioned for a dissolution of the marriage. Betsy and John have two children, a son born in 1999 and a daughter born in 2002. Child custody is not at issue in this case.

¶ 4     Both parties were licensed and practicing attorneys prior to their marriage. Betsy earned a bachelor's degree in business administration in 1990 and a juris doctor degree in 1993. Following her graduation from law school, Betsy was admitted to the Illinois bar and initially worked full time as a tax consultant for Arthur Anderson. Betsy then joined the law firm of Sonnenschein Nath & Rosenthal as an associate, where her practice concentrated on employee benefits and executive compensation law. Betsy earned in excess of $70,000 annually at the firm. In late 1996, Betsy joined the benefits consulting firm of Hewitt Associates, where she worked as a consultant until January 2000, earning close to $80,000 annually.

¶ 5     After the birth of the parties' first child, by agreement of the parties, Betsy stopped practicing law. From 2000 through 2006, Betsy was primarily a stay-at-home mother, but

worked part-time operating a house painting business and selling Mary Kay cosmetics. Betsy testified that she did not like practicing law.

¶ 6    Betsy also baked, first for herself, then for her friends. Betsy started a bakery called Baked by Betsy, Inc., working part-time in 2006 and full-time starting in 2007. John drafted the documents to establish the business as a limited liability company and issued stock.

¶ 7    The bakery reported losses for the tax years 2007 and 2008. At the time of trial it was likely the bakery would also report a loss for 2009. Betsy took no salary from the bakery in 2006-08, but began taking a weekly salary of $200 before the trial.

¶ 8    On at least three occasions, the parties loaned money to the bakery business: (1) $3,000 in February 2006; (2) $3,000 in May 2006; and (3) $10,000 in March 2008. These loans were evidenced by written promissory notes. The February 2006 loan was repaid.

¶ 9    The parties also advanced money ultimately totaling $201,500 to the bakery business by taking a home equity loan against the marital residence. John testified that the money from the home equity loan constituted a loan to the business, to be repaid by the time their eldest child was ready to enter college. Betsy testified that it was an equity investment. John testified that when the couple took out the home equity loan, Betsy said she could always get a job with her friend and accountant, Sandra Burkett, to repay it. The bakery's tax returns and financial statements, as well as a "year one *pro forma*" sheet itemizing anticipated costs and expenses of the bakery business created by Betsy and Burkett, characterize these funds as a loan. However, Burkett testified that it was beneficial to categorize the funds as a loan for tax purposes and she had not made any independent assessment of whether the funds were in fact a loan or equity. Burkett also testified that the *pro forma* projections for the business reflected the assumption the parties would borrow from a bank or others.

¶ 10    In August 2007, Betsy obtained a $30,000 loan for the business from Burkett. The promissory note (Burkett note) states that the loan is between the bakery or Betsy and Burkett; Betsy's signature does not indicate it was made in her corporate capacity. Betsy testified that she discussed this loan with John. Betsy testified that this loan is being repaid from the bakery's business account.

¶ 11    Michael Mattson, a business appraiser employed by the Griffing Group, testified for Betsy as an expert witness on the valuation of the bakery business. After finding the asset and income approaches unsuitable to the case, Mattson valued the bakery business at $69,000. This valuation assumed that the Burkett note was a liability of the business. Mattson did not consider the home equity loan a debt of the bakery business. Mattson explained that a regular debt would be evidenced by a note between the business and the lender. Mattson also noted that the home, rather than the business, was the collateral for the home equity loan. John did not present expert testimony on the valuation of the bakery business.

¶ 12    John practiced law at the firm of Gardner, Carton & Douglas and eventually became a partner. However, John was laid off from his employment in May 2009. He thereafter obtained full-time employment as an attorney, albeit earning approximately half of his former salary. In July 2010, John's employer changed his compensation structure such that he no longer received fixed compensation. On February 17, 2011, following the judgment appealed from, the circuit court entered an order reducing John's monthly child support obligation,

based on a substantial change in John's financial circumstances.

¶ 13    On October 29, 2010, following the close of the trial, the trial judge issued a memorandum opinion and judgment for dissolution of marriage. The trial judge found Betsy's testimony to be credible, while finding John's testimony and self-representation was consistently skewed toward demeaning and provoking Betsy. The trial judge awarded the bakery business to Betsy. The trial judge found the value of the bakery was $69,000, treating the funds from the home equity loan as an investment in the business, rather than a loan to the business.

¶ 14    The trial judge's opinion and judgment also awarded Betsy lump-sum maintenance of $36,000, payable at $1,000 monthly for 36 months. The trial judge found that if Betsy, who had not practiced law in a decade, continued to raise the children, took courses to have her law license reinstated, and found a job in the current economy, the process would take some time and her resulting income would be purely speculative. The court reasoned that Betsy could choose to pursue the bakery business and either prosper or realize that she needed to pursue another line of work. The trial judge directed that Betsy was otherwise barred from maintenance.

¶ 15    The trial court further divided the marital property, with John being required to pay Betsy $8,912.88 "as a true up to achieve an approximate 60-40 split." The court found that both parties had rebutted all claims of dissipation of assets each party lodged against the other. The parties were granted 28 days within which to file a petition for attorney fees.

¶ 16    On April 29, 2011, the trial court entered an order requiring John to pay an additional $115,000 to Betsy for attorney fees. On May 25, 2011, John filed a timely notice of appeal to this court.

¶ 17                              DISCUSSION
¶ 18                     I. The Home Equity Loan Funds
¶ 19    On appeal, John first argues the trial court erred in ruling that the home equity loan funds were an investment in the bakery, rather than a loan to the business.[1] Apparently conceding there is no loan document, John contends that there was a loan contract implied in fact. " 'A contract implied in fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound.' " *Kohlenbrener v. North Suburban Clinic, Ltd.*, 356 Ill. App. 3d 414, 419 (2005) (quoting *Estate of Jesmer v. Rohlev*, 241 Ill. App. 3d 798, 803 (1993)). An implied-in-fact contract may be based on "the acts of the parties even in the absence of any express statement of specific agreement regarding the details of the contractual relationship." *Id*.

---

[1]Betsy suggests the issue is moot on the ground that the marital home was subject to a "short sale" in which the bank forgave the balance on the loan. John correctly points out that Betsy failed to supplement the record with evidence supporting this assertion, thereby forfeiting the issue on appeal. See Ill. S. Ct. R. 341(h)(7), (i) (eff. July 1, 2008).

¶ 20    John also argues that whether an implied-in-fact contract exists is a threshold question of law. *Wood v. Wabash County*, 309 Ill. App. 3d 725, 728 (1999); *Lampe v. Swan Corp.*, 212 Ill. App. 3d 414, 415 (1991). However, *Wood* and *Lampe* address the issue of whether a written employee handbook created an implied-in-fact employment contract. *Wood*, 309 Ill. App. 3d at 728; *Lampe*, 212 Ill. App. 3d at 415. This rule is based on Illinois law stating that the provisions of a written instrument are to be interpreted by the court. *Harrell v. Montgomery Ward & Co.*, 189 Ill. App. 3d 516, 521 (1989). In contrast, in cases of purported implied-in-fact oral contracts, this court has ruled that the trial court is in a better position to weigh the testimony adduced at trial, and the trial court finding will stand unless it is against the manifest weight of the evidence. See, *e.g.*, *Knaus v. Dennler*, 170 Ill. App. 3d 746, 752 (1988); *Century 21 Castles by King, Ltd. v. First National Bank of Western Springs*, 170 Ill. App. 3d 544, 549 (1988).

¶ 21    This case falls into the latter category. John testified that the funds were intended as a loan, while Betsy testified that they were intended as an investment. The trial judge found Betsy's testimony to be credible, while finding John's testimony was skewed. The bakery's tax returns, financial statements, and "year one *pro forma*" sheet characterize the funds as a loan. However, Burkett, the accountant involved in creating these documents, testified that this was done for tax purposes and she had not made any independent assessment of whether the funds were in fact a loan or equity. Mattson, the business valuation expert, testified that he did not consider the home equity loan funds a debt of the bakery business because a regular debt would be evidenced by a note between the business and the lender. The evidence included loans made to the business evidenced by promissory notes in 2006 and 2008. The record shows the home equity loan funds were received by the bakery in 2007, without executing a promissory note. The trial judge was aware that the parties have law degrees. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995). Given the record on appeal, we conclude that the trial court's ruling was not against the manifest weight of the evidence.


¶ 22                                    II. Maintenance

¶ 23    John also argues that the trial court erred in awarding Betsy rehabilitative maintenance without requiring that she seek gainful employment or maintain employment commensurate with her education, experience and training. Betsy responds that the memorandum opinion and judgment of dissolution properly awards her maintenance in gross.

¶ 24    "The label attached to an obligation and the language used in a decree are not controlling, and a court must examine the substance of the order to determine the nature of an obligation." *In re Marriage of Adamson*, 308 Ill. App. 3d 759, 768 (1999). "In Illinois, a support obligation can take several forms, including (1) periodic maintenance, payments for an indefinite period in an indefinite amount subject to modification in response to a change in the parties' circumstances; (2) maintenance in gross, a fixed sum of money, payable in installments for a fixed period of time, that is nonmodifiable; and (3) property settlements in lieu of maintenance, a lump sum payment, often payable in installments, given in

exchange for a waiver of rights, including periodic maintenance, that is nonmodifiable." *Id.* at 769 (citing *In re Marriage of Rowden*, 163 Ill. App. 3d 869, 871-72 (1987)). Periodic maintenance, the common type of maintenance, typically takes the form of an order to pay a spouse a specified amount at regular intervals. *In re Marriage of Mass*, 102 Ill. App. 3d 984, 994 (1981). Under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2010)), the defining characteristic of periodic maintenance is its indefiniteness, as it may be modified or terminated by a court upon a showing of a "substantial change in circumstances." 750 ILCS 5/510(a-5) (West 2010); *Mass*, 102 Ill. App. 3d at 994. In contrast, maintenance in gross involves an order to pay a spouse "a definite total sum upon the entry of the decree or a definite total sum in installments over a definite period of time." *Mass*, 102 Ill. App. 3d at 994. The distinguishing characteristics of maintenance in gross are its definite sum and its vesting date. *In re Marriage of Hildebrand*, 166 Ill. App. 3d 795, 799 (1988). Amounts that are awarded as maintenance in gross are not subject to modification based on a change in circumstances. *In re Marriage of Freeman*, 106 Ill. 2d 290, 298 (1985). Maintenance in gross, like "alimony in gross" awarded prior to the Act, is in the nature of a property settlement and creates a vested interest in the recipient. *Id.* at 296. "Property settlement" payments were often confused with alimony in gross because both were usually for a definite sum payable in installments over a definite period of time. *Mass*, 102 Ill. App. 3d at 995. "However, 'property settlement' payments were only ordered to be paid by a court if the parties had agreed to allow them in a predivorce agreement." *Id.* Also, alimony in gross constituted payments made solely in recognition of the husband's duty to support the wife. In contrast, "in a 'property settlement' the wife received the payments in exchange for all her marital rights including her right to support, her inheritance rights, and any ascertainable rights to property held in the husband's name." *Id.*

¶ 25    Historically, periodic maintenance is the preferred form of maintenance, and an award in gross was appropriate only in exceptional circumstances. *Lamp v. Lamp*, 81 Ill. 2d 364, 374 (1980). However, in *Freeman*, our supreme court was first faced with the question of whether maintenance in gross was payable under the Act. *Freeman*, 106 Ill. 2d at 296. The *Freeman* court concluded the Act authorized the trial judge to award maintenance in gross if he or she found it to be appropriate and just in a particular case. See *id.* at 298, 300; see also 750 ILCS 5/504(a) (West 2010). Both the form and amount of alimony to be awarded lie within the discretion of the trial court and such award will not be reversed absent an abuse of discretion. *Riordan v. Riordan*, 47 Ill. App. 3d 1019, 1023 (1977).

¶ 26    In this case, the language of the memorandum order and judgment of dissolution refers to a lump sum, but cannot be a pure property settlement payment because the parties had not agreed to allow them in a predissolution agreement. The order provides a definite, nonmodifiable total sum in installments over a definite period of time and, thus, provides for maintenance in gross, not rehabilitative periodic maintenance. Indeed, while the order refers to the payment allowing time for Betsy's bakery to prosper or for Betsy to realize she may have to pursue another career, the language of the order shows that the maintenance in gross is clearly intended in lieu of rehabilitative maintenance. The trial judge was clearly concerned about the uncertainties surrounding the results should Betsy attempt to resume practicing law.

¶ 27    John suggests that construing the award as maintenance in gross would be inconsistent with the trial judge's intent of achieving a 60-40 split of the marital assets. However, the judgment of dissolution refers to an "approximate 60-40 split" in favor of Betsy. The trial judge could have reasonably considered the maintenance in gross as an acceptable deviation from the overall split, given that the order barred Betsy from otherwise seeking maintenance. In short, the maintenance award seems to reflect the trial judge's consideration of what would be appropriate and just under the facts and circumstances of this particular case. We conclude that the trial judge did not abuse his discretion in this regard.

¶ 28                                    III. Attorney Fees

¶ 29    John further contends that the trial court erred in failing to deem $86,613.90 in marital funds Betsy spent on attorney fees and litigation expenses as an advance against her share of the marital estate. See 750 ILCS 5/501(c-1)(2) (West 2010). Betsy responds that John has forfeited the issue on appeal by failing to include a transcript of the April 29, 2011, hearing on the issue in the record on appeal. In his reply brief, John states that no court reporter was present on that date.

¶ 30    As the appellant, the burden falls on John to present a sufficiently complete record for review. *E.g.*, *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Id.* "Without an adequate record preserving the claimed error, the reviewing court must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law." *Id*. at 157. " 'Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.' " *Id.* (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)). In the absence of a report of proceedings, Illinois Supreme Court Rule 323(c) (eff. Dec. 13, 2005) authorizes a bystander's report, and Illinois Supreme Court Rule 323(d) (eff. Dec. 13, 2005) authorizes an agreed statement of facts. Neither has been provided. Attorney fees and litigation expenses generally will be considered an advance against the marital estate "unless otherwise ordered." 750 ILCS 5/501(c-1)(2) (West 2010). Absent a transcript or acceptable substitute, there is no way to determine whether the order appealed from is precisely such an order. John cites no authority requiring the trial judge to expressly state in the order that various sums are not advances against the marital estate. Accordingly, John has failed to rebut the presumption that the trial court's ruling was correct.

¶ 31                                    IV. The Burkett Note

¶ 32    John next contends that the trial court erred in its valuation of the bakery by construing the Burkett note as marital debt, rather than as Betsy's personal obligation. John states that the Burkett note was obtained secretly and without his consent. John observes that the Burkett note was not signed by Betsy as president of the business and asserts that there was no resolution from the bakery's board of directors authorizing the loan.

¶ 33    Betsy testified that she and John discussed the loan. Although Betsy did not sign the Burkett note expressly as president of the bakery, the manner of signature is not dispositive.

*Zahl v. Krupa*, 365 Ill. App. 3d 653, 660 (2006). Where language in the document conflicts with the apparent representation by the officer's signature, an issue of fact is created. *Id*. Here, the language of the Burkett note and the testimony at trial from Betsy, Burkett and Mattson tend to support the conclusion that the debt was incurred on behalf of the bakery business (regardless of whether Betsy was also personally liable on the Burkett note). John's assertion that there was no resolution from the bakery's board of directors authorizing the loan refers to his closing argument, rather than to evidence adduced at trial. Moreover, John points to no evidence in the record establishing that Betsy's authority to obtain a business loan required approval or ratification by the bakery's board of directors.

¶ 34　　The cases relied upon by John are distinguishable. In *In re Marriage of Forbes*, 251 Ill. App. 3d 133, 134-35 (1993), this court merely recognized that a prior, unpublished order of this court found that the classification of a business debt as the husband's nonmarital debt was not an abuse of discretion, especially since the debt was incurred for the benefit of the business which was awarded to him. Without a full understanding of the facts in the original litigation, it is impossible to say whether the contrary ruling would have been an abuse of discretion. In *In re Marriage of Lees*, 224 Ill. App. 3d 691, 695 (1992), this court ruled that the tax debt on a house, a nonmarital asset, was similarly nonmarital. In this case, the bakery business was a marital asset. In *Szesny v. Szesny*, 197 Ill. App. 3d 966, 973 (1990), the trial judge relied upon not only the husband's sole access to the charge cards used to incur the debt, but also his inability to show any family benefit from his expenditures. Here, the loan was ostensibly obtained to benefit a marital asset. Accordingly, we conclude that John fails to show that the trial judge abused his discretion in his valuation of the bakery business.

¶ 35　　　　　　　　　　　　　V. Dissipation of Marital Property

¶ 36　　John argues that the trial court applied an incorrect standard to his claim that Betsy dissipated marital property. Betsy disagrees, but also maintains that any error in this regard was harmless. In allocating property pursuant to section 503 of the Act, the trial court must consider any "dissipation by each party." 750 ILCS 5/503(d)(2) (West 2010). Dissipation generally has been defined as the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown. *E.g.*, *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 652-53 (2009) (and cases cited therein). The person charged with dissipation bears the burden of establishing by clear and convincing evidence how the funds were spent. *Id*. at 653.

¶ 37　　Although John claims that the trial judge generally applied an incorrect standard to his dissipation claims, he identifies only two examples of expenses meeting the standard definition of dissipation: (1) a $20 baggage fee Betsy incurred on a trip with her boyfriend; and (2) fees totaling less than $160 Betsy incurred enrolling in two online dating services. Assuming *arguendo* these sums were for Betsy's sole benefit, we are obliged to determine whether the trial court's error in applying the incorrect standard for calculating dissipation was harmless. *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 375 (2008). Errors that are trivial in relationship to the value of the marital estate may be deemed harmless. See *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 664 (2008) (valuation error harmless in light of

value of marital estate). Such is precisely the case here.

¶ 38                    VI. Nonmarital Property

¶ 39    Moreover, John argues that the trial court erred in failing to account for Betsy's nonmarital property. Section 503(d) of the Act requires the trial court to divide marital property in "just proportions." 750 ILCS 5/503(d) (West 2010). Before doing so, the value of the marital and nonmarital assets must be established. *Sanfratello*, 393 Ill. App. 3d at 650.

¶ 40    In this case, John asserts that Betsy had nonmarital property, *i.e.*, three pieces of jewelry, worth approximately $23,000. This assertion rests primarily on John's own testimony, which the trial court found to be biased, although there is an appraisal for a diamond ring for insurance purposes included in the record on appeal. John fails to mention that the trial judge accounted for John's nonmarital property, primarily shares of stock worth approximately $18,000. Given this record, we conclude that the trial judge did not fail to account for Betsy's nonmarital property, but considered it roughly equal to that of John and, thus, not a significant factor in the division of the marital property.[2]

¶ 41         VII. The True-Up Payment and the Contribution Order

¶ 42    Lastly, John challenges the court-ordered "true-up" payment and contribution to Betsy's attorney fees. However, these arguments are premised on the notion that the trial court erred in the valuation and distribution of the marital property. Given our conclusion that no such error occurred (save the harmless error regarding the dissipation claim), John's arguments regarding these two orders necessarily fail also.

¶ 43                         CONCLUSION

¶ 44    In short, we conclude that the trial court's ruling that the home equity loan funds were an investment in the bakery, rather than a loan to the business, was not against the manifest weight of the evidence. The trial judge did not abuse his discretion in awarding Betsy maintenance in gross, given the circumstances of the case. John has failed to rebut the presumption that the trial court's ruling on attorney fees was correct. Further, John has failed to show the trial judge abused his discretion in the valuation of the bakery business. The trial court committed harmless error in assessing John's dissipation claim. The trial court did not err in accounting for the parties' nonmarital property. Accordingly, John's related arguments regarding the true-up payment and contribution order necessarily fail. For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 45    Affirmed.

_____

[2]In a footnote to his opening brief, John notes that Betsy received an automobile from her parents after the conclusion of trial. However, John cites no authority regarding the consideration of property acquired after trial and no evidence of the value of the automobile, thereby forfeiting the issue on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).