NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2018[*]
Decided February 22, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-2460

| | |
|---|---|
| MARK GLENN HEXUM, | Appeal from the United States |
|     *Petitioner-Appellant*, | Tax Court. |
| | |
|     *v.* | No. 13994-16 |
| | |
| COMMISSIONER OF INTERNAL | Joseph Robert Goeke, |
| REVENUE, | *Judge*. |
|     *Respondent-Appellee*. | |

**O R D E R**

Mark Hexum paid his ex-wife Sherri half of the net gain from the sale of their marital home because the Illinois family court ruled payment was required under their dissolution (divorce) agreement. Mark had been responsible for the house's mortgage and expenses after the divorce, and in his view, the equity accrued before the sale was not "marital property" that he should have been made to split with Sherri when the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

house was sold. He characterized the payment as maintenance (alimony) and deducted it on his tax return. The Commissioner of Internal Revenue disallowed the deduction and penalized him for underpayment. The Tax Court agreed with both measures. Mark challenges the decision, and we affirm the judgment.

Mark and Sherri settled on the terms of their divorce in a dissolution agreement. As maintenance, Mark agreed to pay Sherri a percentage of his salary and of the incentive-based pay that he receives. The agreement provides that "maintenance is taxable income to Sherri and deductible by Mark [under] Section[s] 71(a) and 215 of the Internal Revenue Code." It incorporates Section 510 of the Illinois Marriage and Dissolution of Marriage Act, which provides that unless the agreement says otherwise, "the obligation to pay future maintenance is terminated upon the death of either party." 750 ILCS 5/510(c) (2012).

In a separate paragraph regarding the marital home, Mark and Sherri agreed to sell the house and divide equally "the net equity of said property," and they agreed that Mark would "pay all expenses associated with the . . . property until [then]." Accordingly, from when the agreement took effect to when the house was sold, Mark paid the mortgage on the property; he also paid to replace some carpeting. In total, he paid $25,906. Mark believed that before the gain from the sale was divided, he should first be reimbursed that sum as non-marital property. Sherri moved the family court to hold Mark in civil contempt when he withheld the money. The circuit judge rejected Mark's view of the agreement and directed him to pay Sherri half of the net gain.

On his 2013 tax returns, without consulting a lawyer or accountant, Mark told his tax preparer that he paid alimony in a total amount that included the $12,953 payment to Sherri, and he claimed a deduction. The Internal Revenue Service determined the payment was not alimony under 26 U.S.C. § 71 and disallowed the deduction, *see* 26 U.S.C. § 215. The IRS concluded that Mark underpaid his taxes, and it imposed a penalty, *see* 26 U.S.C. § 6662(a).

Mark sought review in Tax Court. At his hearing, counsel for the Commissioner asked Mark if he believed he would be liable to pay the "alimony" even if Sherri died, and Mark responded, "That I would have consulted an attorney on." He continued: "That would have went to my sons [*sic*] and I wouldn't have a problem with anything going to my sons."

The judge ruled for the Commissioner. The judge said that "it is undisputed by [Mark] that he would have continued to have an obligation to make the payments on

the gain from the real estate even if his former spouse had passed away before the sale." Thus, the judge concluded, the payment did not qualify as alimony. *See* 26 U.S.C. § 71(b)(1)(D). The judge also decided that the penalty was proper because Mark did not consult a professional before taking the deduction. *See* 26 U.S.C. §§ 6662, 6664(c)(1).

On appeal Mark argues that the equity accrued in the house after the divorce is not marital property under Illinois state law, *see* 750 ILCS 5/503, and thus, he reasons, his payment of half of its value is necessarily alimony. He also says the payment qualifies as alimony under § 71(b), as described on the IRS's website, and so was properly deducted. Accordingly, he also challenges the penalty as unwarranted. Finally, as he did in the Tax Court and in the family-court proceedings, Mark levels accusations of corruption and incompetence against the family court and his divorce attorneys and appears to dispute the legitimacy of the dissolution agreement.

We review the Tax Court's conclusions of law de novo and factual determinations for clear error, taking the evidence in the light most favorable to the Tax Court's ruling. *Square D Co. & Subsidiaries v. C.I.R.*, 438 F.3d 739, 743 (7th Cir. 2006). As the taxpayer, Mark bears the burden of showing a deduction was rightfully taken. *See INDOPCO, Inc. v. C.I.R.*, 503 U.S. 79, 84 (1992).

We find unpersuasive Mark's argument that the payment must be alimony simply because, according to his reading of Illinois law, the increased equity was his property rather than marital property. Our job here is not to review the family court's ruling that Illinois law requires Mark to transfer half of the net gain on the sale of the house. "The state law creates legal interests but the federal statute determines when and how they shall be taxed." *United States v. Mitchell*, 403 U.S. 190, 197 (1971) (citation and quotation omitted). We are concerned only with how the Internal Revenue Code treats that transfer.

Taxpayers may deduct what they pay as alimony as defined in § 71(b). 26 U.S.C. § 215. Section 71(b)(1) lists four criteria for a payment to qualify as alimony, and the only one at issue here is the requirement that the payor has no obligation to make the payment after the death of the payee. Id. § 71(b)(1)(D). Mark directs us to IRS Tax Topic 452 from the IRS's website because, he argues, its list of the properties of alimony shows the payment is alimony; but he also acknowledges that the website's list also includes the requirement that "alimony" payment obligations cease at the payee's death. *See https://www.irs.gov/taxtopics/tc452* (visited Feb. 13, 2018).

The judge of the Tax Court concluded that the payment was not alimony because Mark did not dispute that it survived Sherri's death, but that premise is inaccurate. When asked whether he believed he would be liable to pay half of the net gain from the sale even after Sherri died, Mark said he would have to consult an attorney, and that the money "would have went to my sons [*sic*] and I wouldn't have a problem with anything going to my sons." Saying that he needed to consult an attorney is not a failure to dispute the point. Nor is his statement that he would not contest a result in a hypothetical scenario in which Sherri died before the sale and the money went to their children.

But that inaccuracy does not matter if we determine that Mark's liability to make the payment would survive Sherri's death. Our court has not yet applied § 71(b)(1)(D) to determine if a payment properly can be deducted as alimony. Other courts of appeals, however, when applying § 71(b)(1)(D), engage in a three-step inquiry. First, they ask whether the divorce order expressly terminates liability upon the death of the payee. *See Johanson v. C.I.R.*, 541 F.3d 973, 977 (9th Cir. 2008); *Lovejoy v. C.I.R.*, 293 F.3d 1208, 1210 (10th Cir. 2002). Second, if it is silent, they examine whether the applicable state law unambiguously ends liability at the payee's death. *See Johanson*, 541 F.3d at 977. Third, if the state law is unclear, they return to the divorce order and interpret it to decide whether it terminates the obligation at the payee's death. *See Hoover v. C.I.R.*, 102 F.3d 842, 846 (6th Cir. 1996). This sensible approach guides our analysis.

Neither the divorce order (which incorporated the dissolution agreement) nor the circuit court order requiring Mark to pay half of the net equity says if that obligation would terminate with Sherri's death. As for Illinois law, in 2013 it characterized three types of support payments: periodic maintenance, maintenance in gross, and property settlements. *In re Marriage of D'Attomo*, 2012 IL App (1st) 111670 ¶ 24. Periodic maintenance requires the supporting spouse to pay regular amounts at regular intervals for an indefinite time, *id.*, and the obligation terminates at the death of the payee, *see* 750 ILCS 5/510(c). Maintenance in gross and property settlements are payments of fixed amounts; both are vested interests held by the payee, so obligations to make these payments survive the payee. *In re Marriage of Freeman*, 478 N.E.2d 326, 328–30 (1985). The distinction is that maintenance in gross may be paired with periodic maintenance and a property settlement may not. *D'Attomo*, 2012 IL App (1st) 111670 ¶ 24.

Illinois law unambiguously provides that the payment at issue would not terminate at Sherri's death. Mark was to transfer half of the net gain from the sale. This is a fixed amount and so is categorized either as maintenance in gross or a property

settlement. *See In re Marriage of Gallentine*, 576 N.E.2d 575, 577 (Ill. App. Ct. 1991). (And because periodic maintenance was ordered, it must be the former.) Regardless, Mark's obligation would not terminate at Sherri's death. *See Freeman*, 478 N.E.2d at 330. Because the payment does not meet the requirement of § 71(b)(1)(D), it is not alimony.

Even if Illinois law were ambiguous, however, we still would conclude the payment is not alimony under the dissolution agreement. The dissolution agreement expressly characterizes as "maintenance" only the payments of a percentage of Mark's income to Sherri and adds that they are deductible by Mark under 26 U.S.C. §§ 71(a) and 215. The parties also agreed that Mark's maintenance obligation terminates with a change of circumstances listed in 750 ILCS 5/510(c), which includes the death of a party. The proceeds of the sale of the house, however, are addressed in a separate paragraph that does not reference modifiability or taxes, suggesting different treatment was intended. On review of the agreement as a whole, the payment is not alimony.

We also conclude that the Tax Court properly imposed a penalty on Mark for underpaying his taxes. The IRS may impose a penalty of 20% of the amount underpaid if the taxpayer was negligent or disregarded rules or regulations. 26 U.S.C. § 6662. No penalty is imposed under 26 U.S.C. § 6662 if the taxpayer acted with reasonable cause and in good faith. 26 U.S.C. § 6664(c)(1). Generally a taxpayer seeking to apply this exception must have obtained an opinion from an accountant or lawyer. *Brown v. C.I.R.*, 693 F.3d 765, 769 (7th Cir. 2012) (citing *United States v. Boyle,* 469 U.S. 241, 250–51 (1985)). To justify taking the deduction, Mark says he followed the "very clear" law on alimony—though he also says that he was "unable to find applicable case law" confirming his interpretation. He did not consult with a professional before telling his tax preparer how much total alimony he paid during the tax year. Therefore, the exception does not apply.

Finally, we note that Mark's complaints about the Illinois family court system and his family lawyers are irrelevant. If there is a legal argument hiding in his comments, we take his point to be that the dissolution agreement is invalid. Even if this were true, a payment under a dissolution agreement that is later invalidated is still subject to the alimony provisions of the Code. *See Richardson v. C.I.R.*, 125 F.3d 551, 554 (7th Cir. 1997). Thus the argument does not affect the outcome here.

AFFIRMED