No. 2-18-0771
Order filed November 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* THE MARRIAGE OF RICHARD WATSON, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 11-D-903 |
| STEPHANIE WATSON, | ) ) | Honorable Charles Smith, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not abuse its discretion in extending ex-wife's maintenance as it properly found that the ex-wife was not able to work due to her mental illness.

¶ 2   Petitioner, Richard Watson, appeals the trial court's granting of a post-dissolution petition to extend and increase maintenance in favor of respondent, Stephanie Cox, formerly Stephanie Watson. Richard contends that the court committed several reversible errors relating to its factual determinations and evidentiary rulings. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4       Richard and Stephanie were married in 2003, and on May 2, 2011, Richard filed a petition for dissolution of marriage. Although Stephanie was not present during the hearing on Richard's petition, the trial court entered a judgment for dissolution of marriage on November 14, 2012. The court reserved the issue of maintenance to Stephanie, stating "it is well established *** that [Stephanie] suffers from substantial mental illness as well as substance abuse, the Court finds it would be inequitable to bar her from receiving maintenance permanently."

¶ 5       Stephanie filed a petition to set maintenance in June 2014. On November 19, 2014, after hearing testimony on the petition, the trial court entered an order, which found Stephanie to be "destitute" while Richard made a "very good living." Guided by the logic of the soon-to-be effective amendment to the Illinois Marriage and Dissolution of Marriage Act (Act) (See Pub. Act 98-961 (eff. Jan. 1, 2015) (adding 750 ILCS 5/504(b-1))), the court awarded Stephanie $4000 per month for 36 months in reviewable maintenance, basing the amount on Richard's $200,000 annual base salary.

¶ 6       On November 16, 2017, Stephanie petitioned the court to extend and increase maintenance. In her petition, she asserted that in November 2014, she was disabled and unable to support herself. She further asserted that, despite seeking treatment for her "profound psychological and psychiatric conditions," she is unable to obtain or sustain employment. Finally, she asserted that both Richard's income and her cost of living had increased substantially since the 2014 maintenance order.

¶ 7       The trial court held a two-day hearing on the petition and heard testimony from the parties. The court admitted several exhibits as well. The transcripts from the hearing showed that Stephanie testified erratically. She spoke out of turn, ignored court directives to only answer the question that was asked, and was warned twice about the use of foul language to describe Richard.

¶ 8     As erratic as her testimony was, Stephanie testified to the following. She suffers from post-traumatic stress disorder (PTSD) and depression and experiences anxiety attacks daily. She takes psychotropic medication, Zoloft and Klonopin, and uses medical marijuana to help with the symptoms associated with her disorders. She is currently seeking psychiatric care from Dr. Kate Dickson and has monthly appointments with her. She also has experienced suicidal ideations and attempted to commit suicide on at least four different occasions since 2013. She attempted to apply for both social security and Veteran's Administration (VA) disability benefits but has not received them. Stephanie testified that she rents a three-bedroom home in Du Page county for over $2000 a month and lives alone. She had taken several classes at the College of Du Page and received high marks in the classes she completed. She had not, however, applied for or obtained any employment since the entry of the 2014 maintenance order.

¶ 9     Richard testified that he works as a financial analyst and his monthly income was over $22,000. He also had received bonuses every year for the past five years in varying amounts always at least six figures. Richard admitted that he sought an order of protection against Stephanie in 2017 and that in the petition, he claimed that she was "mentally ill." When asked what he meant by "mentally ill," Richard stated that he meant that Stephanie gets very angry at him and it scares him; "I meant the statement as if – you know, I know lots of people who get angry and crazy, and Stephanie happens to be one of them."

¶ 10    Without objection, the trial court admitted into evidence Stephanie's exhibits 8, 9, 10, 11 and 13, and Richard's exhibits 1 through 8. Over Richard's objections of irrelevancy, the court admitted Stephanie's exhibits 6 and 12 into evidence. Exhibit 6 was a letter, dated May 3, 2017, from Dr. Dickson explaining that she had been treating Stephanie for PTSD, recurrent major depressive disorder, and attention deficit hyperactivity disorder (ADHD) since April 2016. Exhibit

12 was the August 2017 petition for an order of protection that Richard sought against Stephanie in which he used the term "mentally ill" to describe her.

¶ 11    The trial court announced its decision on September 10, 2018. The court initially noted that the 2014 maintenance order did not provide the reasons for granting maintenance and for the length of time for the maintenance, and "there was no further notice as to what issue should be addressed upon the review as is suggested would be the proper procedure." The court then went through each factor outlined in subsections 504(a) and 510(a-5) of the Act before granting Stephanie's petition. See 750 ILCS 5/504(a)(1-14), 510(a-5)(1-9) (West 2018). The court granted Stephanie's petition and set maintenance at $6250 per month for two years. In discussing the opportunity to review the maintenance, the court noted that Stephanie has an affirmative duty to seek and obtain employment. "[T]hus, at a future review of maintenance Stephanie is expected to demonstrate what jobs she has sought and establish a good faith effort to secure employment." The court then discussed that if Stephanie were to assert that her mental illness prevented her from obtaining employment, "then she must demonstrate what attempts she has made to secure disability benefits." The court concluded, that while it "observe[d] Stephanie to be explosive in court and [that she] used inappropriate language, this does not indicate to the Court that she cannot with proper medication and treatment ever be able to work in the future."

¶ 12    Upon being prompted by Richard's counsel, the trial court verified that although it referenced that Stephanie had initially submitted 13 exhibits before announcing its decision, it did not consider any of the exhibits that were not admitted into evidence in rendering its decision. Richard filed his notice of appeal on September 20, 2018.[1]

---

[1] The trial court's September 10, 2018, order did not dispose of all pending claims, as there

¶ 13                                   II. ANALYSIS

¶ 14    Richard contends that the trial court committed nine reversible errors. However, in all but two of the alleged errors, he fails to cite any legal authority and relies solely on his own observations of the underlying proceedings, often in a single paragraph, to convince us on appeal of the trial court's errors. As an example, we incorporate below—in its entirety—Richard's argument regarding the fifth alleged error: the trial court improperly admitted Stephanie's exhibit 6 into evidence.

> "The lone piece of medical evidence offered by Stephanie was Dr. Dickson's letter of May 3, 2017, her Exhibit 6 [citation]. The parties had stipulated to the genuineness of the copy of the letter and that the diagnosis stated in the letter was accurate as of May 3, 2017. However, the parties did not stipulate to admission of the letter into evidence [citation] and Rich objected to Stephanie's Exhibit 6 at hearing on the basis that it was over one year old and did not purport to reflect her current medical condition [citation]. Moreover, the letter does not contain a single statement concerning the issue before the Court; whether Stephanie was unable to work."

¶ 15    The foregoing was nothing more than a recitation of the record and Richard's commentary. It is indictive of the six other points Richard presents to the court without references to legal

---

was an outstanding rule to show cause against Stephanie at the time Richard filed his notice of appeal. However, while the rule to show cause was still pending, Richard petitioned the trial court for a 304(a) finding. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).  It was granted and added to the record on appeal on March 15, 2019. We therefore have jurisdiction to decide this case on the merits. See *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042 (2007).

authorities. We take this time to remind counsel that a reviewing court is entitled to have the issues on appeal clearly defined with pertinent authorities cited and a cohesive legal argument presented. *In re Marriage of Solano*, 2019 IL App (2d) 180011, ¶ 70. In fact, Rule 341(h)(7) provides that "[a]rgument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on" and "[p]oints not argued are forfeited[.]" Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). The appellate court is not a depository into which the appellant may dump the burden of argument and research, and failure to follow Rule 341 may result in forfeiture of an issue on appeal. *In re Marriage of James and Wynkoop*, 2018 IL App (2d) 170627, ¶ 37. Such is the case here.

¶ 16    We therefore only address the two arguments Richard makes in compliance with Rule 341. Richard argues that (1) the trial court erred by finding that Stephanie is unable to work due to her mental conditions and (2) the court abused its discretion in extending Stephanie's maintenance award. We take each argument in turn.

¶ 17    Richard argues that the trial court erred in determining that Stephanie could not work because she failed to show that she was unable to obtain employment. He cites *In re Marriage of Cantrell*, 314 Ill. App. 3d 623 (2000), and *In re Marriage of McGory*, 185 Ill. App. 3d 517 (1989) for the proposition that Stephanie had an affirmative obligation to seek appropriate employment or otherwise become self-sufficient. Stephanie responds that the record is "replete" with evidence supporting her contention that she was unemployable.

¶ 18    Challenges to a trial court's factual findings regarding a maintenance determination are not reversed unless the findings are against the manifest weight of the evidence. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3. A factual finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident or when the finding is arbitrary,

unreasonable, or not based in evidence. *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 67.

¶ 19 We find *Cantrell* and *McGory* to be inapposite. In both cases, the spouse receiving the maintenance award was informed by the court of a specific duty to seek employment or to become employable. *Cantrell*, 314 Ill. App. 3d at 630 (the maintenance order "clearly reflects that [ex-wife] was under an affirmative obligation to seek appropriate employment" using her newly acquired college degree); *McGory*, 185 Ill. App 3d at 519 (the maintenance order required that ex-wife be enrolled as a full-time college student). Here, as the trial court noted, the 2014 maintenance order was silent on the reasons for granting maintenance and does not discuss any specific duty placed upon Stephanie to obtain and maintain employment, unlike the spouses in *Cantrell* and *McGory*.

¶ 20 However, we do note that in any future review of maintenance Stephanie is under an affirmative obligation to seek employment. The trial court noted in its ruling, "at a future review hearing it will be essential for Stephanie to demonstrate her efforts at employment and if unsuccessful, why." The court continued, "the Court will require Stephanie *** to present evidence that her mental illness is so severe that she cannot work in any capacity, and such proof will require competent medical evidence and the opinion of a vocational expert." These detailed instructions have placed Stephanie on notice of what she will need to prove to continue receiving maintenance, should she file a petition to extend maintenance within the allotted time for review.

¶ 21 Despite Stephanie not having a specific duty in the 2014 maintenance order, we note that spouses receiving maintenance do have a good faith obligation to become self-sufficient. *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 708 (2006). However, permanent maintenance is appropriate where a spouse is unemployable. *Id.*; See also *In re Marriage of Stam*, 260 Ill. App.

3d 754, 757 (1994) (holding that the trial court did not err in extending maintenance to an ex-wife where "nothing in the record indicat[es] that [the ex-wife] would be able to become self-sufficient in the near future.").

¶ 22    Here, while the trial court did not go so far as to find Stephanie "disabled," it found that "Stephanie is currently afflicted with mental illness that renders her unable to work." The court heard testimony that Stephanie experiences anxiety "daily," suffers from panic attacks where she "disassociate[s] from [her] body," and has suicidal ideations and has attempted suicide on multiple occasions during the four-year period she received maintenance. Stephanie also testified that although she "function[s] better" on her psychotropic medications, they do not "fix" her anxiety issues. Finally, the court also heard that Stephanie was unable to successfully apply for social security disability or VA disability benefits.

¶ 23    In its findings, the trial court noted that there was no evidence introduced to disprove Stephanie's assertion that she was unable to work. The court lamented that it did not hear testimony from any psychiatric or vocational experts and did not see any documentation, other than the letter from Dr. Dickson, of Stephanie's treatment or hospitalizations. However, the court was "convinced," based upon its observations of Stephanie in the courtroom, that she is "not well." We cannot say that such a finding is arbitrary or not based in evidence. Although we may have found differently, that alone does not justify a reversal of a factual determination made by the trier of fact. See *Chicago Inv. Corp. v. Dolins*, 107 Ill. 2d 120, 129 (1985). We therefore hold that the trial court's determination that Stephanie is unable to work is not against the manifest weight of the evidence.

¶ 24    Having concluded that the trial court did not err in finding Stephanie could not work due to her mental conditions, we next consider whether the court abused its discretion in extending

Stephanie's maintenance. Richard argues that he has already paid in excess of the amount required by the Act's guidelines and that the court abused its discretion in extending Stephanie's maintenance when she failed to make any effort to obtain employment. Stephanie responds that the statute allows for an extension of maintenance when the recipient spouse is unemployable, as she is.

¶ 25    A maintenance review proceeding follows a court order that specifically allows for the review of that order. *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 25. Typically, it is preferred that the court engage in a limited review proceeding by advising the parties on the issues to be addressed and who carries the burden of proof. *Id.* at ¶ 27. However, a court reviewing a maintenance order can engage in a general review of maintenance by considering all the factors in subsections 504(a) and 510(a-5) of the Act and determining whether "to continue maintenance without modification, to modify or terminate maintenance, or to change the maintenance payment terms." *Blum v. Koster*, 235 Ill. 2d 21, 35-6 (2009). The decision to modify maintenance upon conducting a review of the award is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *In re Marriage of S.D.*, 2012 IL App (1st) 101876 ¶ 29. "A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). It is the burden of the party challenging the trial court's ruling to show an abuse of discretion. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 651 (2008).

¶ 26    Contrary to Richard's argument that the trial court did not consider the duration of the maintenance payments that he had already paid to Stephanie or her lack of employment, the court clearly reviewed all the factors in subsections 504 and 510 of the Act in making its decision. 750 ILCS 5/504(a)(1-14), 510(a-5)(1-9) (West 2018). Because the court found that "there was no

further notice as to what issue should be addressed upon the review as is suggested would be the proper procedure," it engaged in a general review of Stephanie's petition to extend maintenance, explained above. In its specific findings of the enumerated factors, the court found that Stephanie might be a candidate for indefinite maintenance and stated that it was not convinced of Richard's argument that because Stephanie got high marks in some photography classes that she was able to be employed full-time.

¶ 27    In arguing that the trial court abused its discretion, Richard once again emphasized that Stephanie received high marks in some courses at the College of Du Page as evidence of Stephanie's ability to work. We find this argument unconvincing. As the trial court explained, taking a few photography and film courses is "unlikely to lead to any gainful employment." Moreover, Stephanie testified that such classes were "therapeutic" in nature.

¶ 28    We find no abuse of discretion in the trial court's decision finding that Stephanie proved a continuing need for maintenance and extending it by two years. The court heard testimony of Stephanie's lack of employment, mental health issues, and need for support to meet her basic requirements. The court also received evidence that Richard's salary, including his bonuses, was over $700,000 annually. In light of the evidence presented, the trial court's findings are not so unreasonable that no reasonable person would take the trial court's view. See *In re Marriage of Schneider*, 214 Ill. 2d at 173.

¶ 29                             III. CONCLUSION

¶ 30    For the foregoing reasons we affirm the order from the Circuit Court of Lake County.

¶ 31    Affirmed.