2022 IL App (2d) 210137
No. 2-21-0137
Opinion filed April 18, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF RICHARD WATSON, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 11-D-903 |
| | ) ) | |
| STEPHANIE COX, f/k/a Stephanie Watson, | ) ) ) | Honorable Charles W. Smith and Ari P. Fisz, |
| Respondent-Appellant. | ) | Judges, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred with the judgment and opinion.

**OPINION**

¶ 1    Respondent, Stephanie Cox (formerly Stephanie Watson), appeals the trial court's order striking her postdissolution petition to extend and increase maintenance provided by petitioner, Richard Watson. Stephanie contends that the trial court erred when it struck her petition as time-barred. We agree, and so we reverse and remand.

¶ 2                                I. BACKGROUND

¶ 3    This case returns to us for a third time, again on the issue of postdecree maintenance. As this appeal centers on the substantive and procedural history of the court's orders regarding maintenance, we will largely focus on the facts relevant to that issue.

¶ 4    Richard and Stephanie were married in 2003 and had two children together. Richard worked as an investment analyst, and Stephanie had been a nurse but had not worked since 2003. Shortly after the birth of the parties' first child, Stephanie lapsed into postpartum depression and her mental health began to seriously deteriorate. Then, in 2011, Richard petitioned for dissolution.

¶ 5    During the pendency of the case, Richard received orders of protection for himself and the parties' children against Stephanie. There were multiple incidents where Stephanie was intoxicated and failed to adequately supervise the children. She also frequently made statements alluding to suicide, violence, and acts of torture. She also painted "apocalyptic[ ]" scenes on the walls and started several fires in the home. In addition, Stephanie variously attempted suicide by overdosing on pills, cutting herself, jumping into the Chicago River, and jumping into the path of a Metra train. Stephanie was also arrested multiple times for battery of Richard, battery of responding officers, and violating the court's orders of protection. According to two psychiatric evaluations prepared for the court (see Ill. S. Ct. R. 215(a) (eff. Mar. 28, 2011); 750 ILCS 5/604(b) (West 2012) (now 750 ILCS 5/604.10(b))), Stephanie had a previously undiagnosed bipolar disorder and alcohol-use disorder.

¶ 6    In November 2012, the trial court, Judge Charles D. Johnson, entered a judgment dissolving the parties' marriage. The court gave Richard sole custody of their children. No visitation was ordered for Stephanie as the court found that she would seriously endanger the parties' children. The court reserved the issue of maintenance to Stephanie, however, stating "it is well established *** that [Stephanie] suffers from substantial mental illness as well as substance abuse" and found that it would be inequitable to bar her from receiving maintenance.

¶ 7    Stephanie filed a petition to set maintenance, and after a November 2014 hearing, the trial court found Stephanie to be "destitute" while Richard made a "very good living." Guided by the

logic of a soon-to-be effective amendment to the Illinois Marriage and Dissolution of Marriage Act (Act) (see Pub. Act 98-961 (eff. Jan. 1, 2015) (adding 750 ILCS 5/504(b-1))), and based on Richard's $200,000 annual base salary, the court awarded Stephanie $4000 per month for 36 months in reviewable maintenance. Richard appealed, and we affirmed. *In re Marriage of Watson*, 2016 IL App (2d) 141247-U (*Watson I*).

¶ 8        In November 2017, Stephanie petitioned the court to extend and increase her maintenance. In her petition, Stephanie asserted that she was disabled and unable to support herself. She further asserted that, despite seeking treatment for her "profound psychological and psychiatric conditions," she could not obtain or sustain employment.

¶ 9        On September 10, 2018, the trial court, Judge Charles W. Smith, held a hearing on the petition and heard evidence from both parties. As we noted in our prior disposition, "The transcripts from the hearing showed that Stephanie testified erratically. She spoke out of turn, ignored court directives to only answer the question that was asked, and was warned twice about the use of foul language to describe Richard." *In re Marriage of Watson*, 2019 IL App (2d) 180771-U, ¶ 7 (*Watson II*).

¶ 10        Stephanie testified that she served as a United States Navy corpsman (medic) for five years and earned an honorable discharge. She then attended college in Georgia and worked as a paramedic before becoming a registered nurse in 2003. As a nurse, Stephanie briefly worked on the "[c]ardiac med/surg" floor at Grant Hospital in Chicago (now closed) until pregnancy complications with the parties' first child required bedrest. After the birth of their first child, the parties agreed that because of Stephanie's "postpartum depression and [her] mental health issues," and because she did not earn much more than childcare would cost, "it would be better for [her] to just stay—[to] be a stay-at-home mom."

¶ 11    Stephanie testified that, during the marriage, the parties owned a 5500 square foot single-family residence in Lake Bluff, where they often hosted parties and charity events. They also frequently attended concerts and sporting events, ate out at restaurants, took several international vacations each year, and employed a full-time nanny.

¶ 12    Stephanie stated that she suffers from post-traumatic stress disorder and depression. She experiences daily anxiety attacks, has frequent nightmares, and suffers from recurring premenstrual dysphoria. As noted, Stephanie also struggles with suicidal ideation and has attempted to commit suicide on at least four different occasions since 2013. (She also last saw her children in 2013.) Stephanie takes Zoloft, Klonopin, and medical marijuana to treat her disorders. As a result of jumping in front of a train, Stephanie was severely injured. Her left big toe was amputated, and the remainder of her foot is "collapsing" such that her remaining toes will have to be amputated eventually. Stephanie now has difficulty walking for more than a few minutes. Stephanie has been denied disability benefits through Social Security and the Veterans Administration. She appealed those denials but has not received any financial assistance.

¶ 13    In comparison to her prior lifestyle, Stephanie now rents a three-bedroom home in Du Page County and determined that she needs to take in a roommate, or possibly her father, to share the rent. Stephanie was taking photography and film courses at the College of Du Page and a refresher first aid course. Stephanie generally received high marks; however, she withdrew from several courses due to her psychiatric hospitalizations and suicide attempts.

¶ 14    On cross-examination, Stephanie stated that her mental and physical condition would not permit her to resume her career as a nurse. Stephanie explained: "I have concentration problems. I have difficulty focusing with the anxiety attacks and on stress and things that can happen to me.

I could make *** mistakes with medications. I would jeopardize *** people's lives." "I wouldn't want someone in my condition treating me," Stephanie concluded.

¶ 15    Richard testified that his monthly base income was over $22,000; however, because much of his income came in the form of varying yearly bonuses, he could not factor that income into his monthly finances. Thus, according to Richard's financial affidavit, his total available monthly income for maintenance payments was $642. However, Richard's bonuses for the past five years were at least six figures each. For example, one of Richard's annual bonuses was $525,000, or more than twice his base salary. So, in 2016, his gross wages were $667,000. In 2017, they were $751,000.

¶ 16    The trial court announced its decision on September 10, 2018. Judge Smith noted that Johnson's 2014 maintenance order did not provide his reasons for granting Stephanie maintenance or its duration. In addition, "there was no further notice as to what issue should be addressed upon the review as is suggested would be the proper procedure." Citing our decision in *In re Marriage of Kuyk*, 2015 IL App (2d) 140733, Judge Smith noted that he was required to ascertain what Judge Johnson wanted reviewed and place the parties on notice about what issues the court would address at any future maintenance review. Judge Smith noted that despite the "somewhat confused state of the record," he could nevertheless conduct a proper review using statutory guidelines and his general sense of what Judge Johnson wanted reviewed. Judge Smith also observed that the revised Act did not provide a *per se* statutory classification for rehabilitative maintenance but permitted a court to order reviewable maintenance.

¶ 17    Judge Smith next observed that there were serious gaps in the presented evidence: "[n]either party elected to call a vocational expert, and neither party sought to call a treating

physician or expert witness as in the area of psychiatry or drug addiction" or "produced any records of any hospitalization or treatment."

¶ 18 Judge Smith then carefully went through each factor outlined in sections 504(a) and 510(a-5) of the Act. See 750 ILCS 5/504(a), 510(a-5) (West 2018). Regarding the parties' present and future earnings ability, Judge Smith noted that maintenance was Stephanie's only source of income. Meanwhile:

"Richard makes a very good living, and there is no indication that he will not continue to do so in the future. Stephanie is currently unemployed, has lost her nursing license and has taken some classes at the College of Du Page which are unlikely to lead to any gainful employment. At a future date Stephanie will need to present evidence that she cannot work due to her disability or that she can work, but at present the Court is satisfied that due to her mental illness she is not employable."

¶ 19 Judge Smith also rejected Richard's assertion that Stephanie was presently employable and could simply have her nursing license reinstated. Judge Smith cited numerous instances where Richard had asserted (and Judge Smith agreed) that Stephanie was seriously mentally ill and then stated:

"Clearly Richard[ ] *** is of the opinion that Stephanie due to her mental illness should not be around her own children. It is, therefore, difficult for this Court to assume that she is well enough to seek and maintain gainful employment.

[T]he Court had the opportunity to observe Stephanie and her actions and her demeanor during the two days of testimony. It is clear to the Court that she is not well, she spoke inappropriately in court and does not follow direction while in court, refusing to stop talking and blurting out answers when no question is pending, and the use of foul and

offensive language. The Court is convinced that Stephanie's conduct was not an act or an attempt to convince the Court that she is ill when she is not."

¶ 20　Concerning the standard of living established during the marriage, Judge Smith pointed out that the marital home awarded to Richard was now in foreclosure, which cut in neither parties' favor. However, there was testimony concerning the parties' vacations, which were "extensive."

¶ 21　Next, based on the length of the parties' marriage (roughly eight years), Judge Smith observed that the statutory maintenance period would be 35 months. However, Judge Smith stated he would depart from the guidelines due to Stephanie's disabilities and the need to modify her maintenance accordingly. Judge Smith further found that "Stephanie may be a candidate for indefinite maintenance due to her disability."

¶ 22　As to the parties' age, health, and stations in life, Judge Smith noted that the parties are relatively young (Richard is 49 and Stephanie is 48). However, while Richard should have "substantial years of future employment," Stephanie likely would not due to her disabilities. In addition, Stephanie had no other sources of income. Regarding equitable factors, Judge Smith noted that Stephanie became mentally ill due to postpartum depression during the marriage. Therefore, it would be "equitable that Richard assist her [financially]."

¶ 23　Turning to the modification factors and the time required for Stephanie to become employable, Judge Smith stated:

> "There was no evidence adduced at the hearing for the Court to find that Stephanie's condition is permanent and that she will never be able to work or that with proper treatment she may not become employable in the future. The Court is extending maintenance for Stephanie, however, at the next review. Both parties are advised to have better evidence on this issue.

\*\*\*

[A]t a future review of maintenance Stephanie is expected to demonstrate what jobs she has sought and establish a good faith effort to secure employment [and] she must demonstrate what attempts she has made to secure disability benefits.

\*\*\*

[While the Court has] observe[d] Stephanie to be explosive in court and [that she] used inappropriate language, this does not indicate to the Court that she cannot with proper medication and treatment ever be able to work in the future.

The Court will award maintenance in the amount of $75,000 per year—that's 30 percent of his first $250,000 of income—payable at the rate of $6,250 per month for a period of an additional 24 months, and that's in September of 2018 [*sic*], and will terminate at that time unless a petition seeking an extension of same is filed on or before the termination date."

¶ 24    As Richard's counsel was writing the order for the court to sign, the following exchange occurred:

"MR. FLITCRAFT [(RICHARD'S COUNSEL)]: [D]id the Court give a date in September of '20 for the termination of maintenance?

THE COURT: That would be two years from today.

MR. FLITCRAFT: Okay. Two years from today."

¶ 25    Richard appealed this maintenance order as well, and we affirmed. *Watson II*, 2019 IL App (2d) 180771-U. For the reader's convenience, we again note that the hearing and decision on maintenance occurred on September 10, 2018.

¶ 26    September 10, 2020, however, came and went, and Stephanie's counsel did not file a petition to extend maintenance until September 28, 2020. Richard, in turn, filed a motion to strike Stephanie's petition as untimely.

¶ 27    On December 10, 2020, the parties appeared before Judge Smith for a hearing. There, Stephanie's counsel asserted that the court's maintenance order was ambiguous and that the petition was timely because it was filed during September of 2020—that is, during the month of the final monthly payment. In contrast, Richard's counsel asserted that the court, essentially, could not extend Stephanie's maintenance now that the filing deadline had passed and maintenance had terminated. Judge Smith rejected both parties' positions. He found nothing ambiguous about the court's prior order and that the petition was untimely, but he would nevertheless allow Stephanie to file a new maintenance petition instead of an extension. In response to Richard's arguments, Judge Smith said that reviewable maintenance is "always reviewable" on terms that the court deems just.

¶ 28    Judge Smith recognized that "there are certain *** very serious issues here" and that, while Stephanie's extension petition under section 510 was tardy, a new maintenance petition under section 504 "will be [her] remedy." Judge Smith emphasized that he was only "ruling on [the] very limited issue" of whether Stephanie could replead and without prejudice to either party. Subsequently, Stephanie's counsel filed an amended petition for maintenance, and Richard filed a new motion to dismiss in which he also sought sanctions.

¶ 29    Between the time Stephanie's amended petition was filed and when it was heard, the assignment for this particular court call changed. Judge Smith moved to a different division, and Judge Ari P. Fisz was assigned to Judge Smith's former call in the Family Division.

¶ 30    When the case hearing came before Judge Fisz on February 18, 2021, Richard's counsel asserted that Stephanie's petition was defective because it "raise[d] no *** new facts [or] legal theories" and maintenance had already terminated. The parties and Judge Fisz then discussed the parameters of Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) and whether there was good cause for the court to permit Stephanie additional time to file for maintenance.

¶ 31    Judge Fisz then queried Stephanie's counsel about whether Judge Smith had given Stephanie an extended deadline to file for maintenance, and counsel stated that Judge Smith had. In response, Judge Fisz noted that the December 10, 2020, order did not clearly state the extension. Richard's counsel was given the last word, stating, "The fact of the matter is that, pursuant to the court's order, if there wasn't a petition filed by a certain date, maintenance terminates. Once that maintenance terminates, there's no basis under law for it to be resurrected and our motion [to dismiss] should be granted."

¶ 32    Judge Fisz granted Richard's motion, with prejudice, finding that there was no written order from Judge Smith allowing Stephanie to file a new maintenance petition after September 10, 2020. However, Judge Fisz did not consider Stephanie's petition completely frivolous and denied Richard's request for sanctions. Stephanie appeals.

¶ 33                                   II. ANALYSIS

¶ 34    On appeal, the parties maintain the positions they took in the trial court. Stephanie contends that the trial court erred when it granted Richard's motion to dismiss, while Richard contends that Stephanie is forever barred from receiving maintenance because she did not file a petition by September 10, 2020. We agree with Stephanie.

¶ 35    A maintenance award provides the recipient the same standard of living after dissolution as the recipient enjoyed during the marriage. *In re Marriage of Brankin*, 2012 IL App (2d) 110203,

¶ 9. In determining whether to award or extend maintenance, a court must consider the parties' income, needs, future earning capacity, and standard of living during the marriage. 750 ILCS 5/504(a), 510(a-5) (West 2018). The court may also consider and require any other factor it deems "just and equitable." *Id.* § 504(a)(14). Given the variety of considerations and the need to tailor maintenance to the circumstances in each case, the court has wide discretion in determining whether maintenance is warranted. A court's maintenance determination will not be reversed absent an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 36   After careful consideration, we determine that Judge Fisz abused his discretion by dismissing Stephanie's petition with prejudice without considering its merits. As an initial matter, we reject Richard's argument that Judge Smith ordered nonreviewable and nonmodifiable fixed-term maintenance in September 2018 such that Stephanie would be forever barred from a maintenance review if she did not petition before the maintenance termination date. Rather, by permitting Stephanie to file a future petition for review, Judge Smith unmistakably ordered *reviewable* maintenance. This award was in contrast to the statutory definition of "fixed-term maintenance," after the end of which maintenance is barred. Compare 750 ILCS 5/504(b-4.5)(3) (West 2018) (reviewable maintenance), with 750 ILCS 5/504(b-4.5)(1) (West 2018) (fixed-term maintenance). Recall, too, that in light of Stephanie's disabilities, Judge Smith found that Stephanie "may be a candidate for indefinite maintenance." Indefinite maintenance (also known as permanent maintenance) is necessarily incompatible with fixed-term maintenance, which terminates automatically *without* review. Illinois courts repeatedly find that it is the substance of a maintenance award—not its label—that controls its character. Except for maintenance in gross, nearly all maintenance awards are implicitly reviewable and modifiable. See *Blum v. Koster*, 235 Ill. 2d 21, 42 (2009); *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 14; *In re Marriage of*

*Kuyk*, 2015 IL App (2d) 140733, ¶ 19. Accordingly, Richard's position that Judge Smith contemplated Stephanie's maintenance might be permanent *and yet* directed that it would forever terminate in the absence of a timely petition is meritless.

¶ 37    Furthermore, we reject Richard's assertion that he would be prejudiced by allowing Stephanie to refile. Maintenance is essentially a matter of equity. Thus, unless the parties agree otherwise, the court determines the award terms and review parameters. Although neither party has cited it, we note that in *Atwater v. Atwater*, 18 Ill. App. 3d 202 (1974), the court held that the former wife's request for maintenance was not barred by laches for failure to file for over 10 years. *Id.* at 209. The court further found that the former husband "ha[d] not suffered injury or prejudice as a result of [his ex-wife's] delay in filing her petition." *Id.* That is so because a dissolution judgment providing for maintenance is a continuing order, and therefore, a petition for maintenance cannot be laches barred. As our supreme court said nearly a century ago, courts possess the "continuing power to modify the provisions of the [dissolution] decree *** at any time, according to the varying needs and circumstances of the parties." *Maginnis v. Maginnis*, 323 Ill. 113, 117 (1926). An "express reservation of the [court's] power" is unnecessary, "for the power exists and may be exercised whether so reserved or not." *Id.* at 117-18.

¶ 38    On December 10, 2020, Judge Smith explicitly gave Stephanie leave to file a new maintenance petition under section 504 of the Act. Judge Fisz, therefore, abused his discretion by (1) failing to adhere to that prior order, and (2) dismissing Stephanie's second petition on the basis that the first one was untimely. The error is somewhat understandable as the record indicates that neither side provided Judge Fisz with a transcript of the December 10, 2020, hearing. Thus, Judge Fisz elected to rely solely on the written order prepared by Richard's counsel, which shed no light on Judge Smith's finding that Stephanie could file a new maintenance petition under section 504.

¶ 39    Although Stephanie phrases her arguments in jurisdictional terms, the error here was not jurisdictional. In *In re Marriage of Kuyk*, 2015 IL App (2d) 140733, we said that regardless of whether (1) maintenance is barred by a marital settlement agreement or a prior judgment, or (2) the petition for maintenance is fatally defective, "the [trial] court will *always* have subject matter jurisdiction to address a party's postdecree petition *** because the [trial] court is where postdissolution matters are heard." (Emphasis in original.) *Id.* ¶ 16. The error here pertains to *procedure*. Consistent with our directive in *Kuyk*, Judge Smith placed both parties on notice of the standards he would use to evaluate future maintenance petitions. *Id.* The procedural error occurred when Judge Fisz failed to ascertain and give appropriate deference to Judge Smith's instructions to the parties. See *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶¶ 14-16 (explaining that the successor judge owes at least some deference to prior judicial determinations in dissolution cases).

¶ 40    Maintenance errors often occur when the judge hearing a case changes and the successor judge fails to adhere to—and may not even be aware of—the prior judge's decisions and instructions to the parties. See, *e.g.*, *In re Marriage of Freeman*, 106 Ill. 2d 290 (1985); *In re Marriage of Bernay*, 2017 IL App (2d) 160583. Therefore, it is incumbent upon the successor judge to carefully scrutinize the prior proceedings to determine the court's previous directives and whether the parties have abided by them. Failure to do so may bring about a completely avoidable and unnecessary injustice by disrupting the parties' settled expectations heading into future proceedings. In the context of maintenance, these errors are particularly significant, especially when the previous judge's orders were based on familiarity with the parties, the issues, and the nuances of the case.

¶ 41    Given all of the events in this case, and Judge Smith's careful and thorough evaluation of the maintenance factors, Judge Smith's prior orders should have received more careful consideration in subsequent proceedings. A previous judge's orders and "intentions" might be "a good example of the individual fashioning of remedy which is now possible under the Act" (*In re Marriage of Freeman*, 106 Ill. 2d at 300). Once again, we emphasize that a successor judge ought to make every effort to understand and defer to those prior findings (*In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶¶ 14-16).

¶ 42    Last, we note that Richard asserts that our statements in *Watson II* are law of the case. Thus, according to Richard, the trial court was prohibited from granting Stephanie more time to file a petition to extend maintenance or a new maintenance petition. That argument lacks merit. In *Watson II*, we noted, with approval, that Judge Smith gave the type of "detailed instructions" that we encouraged in *In re Marriage of Kuyk*, 2015 IL App (2d) 140733, which "placed Stephanie on notice of what she will need to prove to continue receiving maintenance, should she file a petition to extend maintenance within the allotted time for review." *Watson II*, 2019 IL App (2d) 180771-U, ¶ 20. That statement was purely *dicta*; it was an observation that the trial court notified the parties as to the evidence and standards the court intended to apply in the future. It is axiomatic that not every comment by a higher court is binding authority on a lower court (*Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010)). That observation in *Watson* II in no way constrained the trial court—whether it was Judge Smith or any other judge—from exercising discretion in the interests of justice in any subsequent case litigation.

¶ 43                              III. CONCLUSION

¶ 44    We determine that adherence to an arbitrary filing deadline, which would effectively bar maintenance for a disabled former spouse, would inequitably place form over substance. Judge

Smith correctly exercised his discretion in allowing Stephanie to replead, and Judge Fisz abused his discretion when he failed to adhere to Judge Smith's prior ruling. We are compelled to point out that this case is particularly extreme given Stephanie's apparent level of need. In *Watson I*, we noted that the trial court permitted several orders to be amended *nunc pro tunc* to comply with the court's filing deadlines. *Watson I*, 2016 IL App (2d) 141247-U, ¶ 4. Those amendments were largely due to Stephanie's difficulties communicating with her attorneys. It may also be that the late filing of Stephanie's petition for review is even further evidence of her disability. These are factors for the court to carefully consider on remand.

¶ 45    For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and remand for further proceedings consistent with this opinion.

¶ 46    Reversed and remanded.

**No. 2-21-0137**

| | |
|---|---|
| **Cite as:** | *In re Marriage of Watson*, 2022 IL App (2d) 210137 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 11-D-903; the Hon. Charles W. Smith and the Hon. Ari P. Fisz, Judges, presiding. |
| **Attorneys for Appellant:** | Joel S. Ostrow, of Bannockburn, for appellant. |
| **Attorneys for Appellee:** | Margaret E. Keane and Dina Warner, of Berger Schatz, LLP, of Chicago, for appellee. |